[No. 369, January 29, 1890.]

ALVAH E. WOLCOTT AND FRANK J. WRIGHT, PLANTIFFS IN ERROR, v. S. M. ASHENFELTER AND NETTIE A. ASHENFELTER, DEFENDANTS IN ERROR.

LIEN, OF LANDLORD, UNDER SEC. 1537, COMP. LAWS, N. M. 1884, WAIVER OF—CONSTRUCTION OF STATUTES.—By section 1537, Compiled Laws, it is provided that, "Landlords shall have a lien on the property of their tenants, which remains in the house rented, for the rent due; and said property may not be removed from said house, without the landlord's consent." Under this section of the statute the lien expressly attaches against the property of the tenant which remains

in the house, and not against the property which is removed from the house with the landlord's consent. The tenant has no right to remove the property from the house until the rent is paid. This it is. the right of the landlord to insist upon, but, if he consents to the removal, he thereby waives his lien on the property. Where the building rented consists of several apartments, rented to different tenants, each apartment is a "house rented" within the meaning of the statute; and the removal of the property of a tenant from one apartment of the building to another apartment of the same building is a removal from "said house."

Id.—Effect of Waiver of—Subsequent Mortgage Lien, Priority of Over Lien for Rent Previously Accrued.—Where, in such case, the landlord waives his lien for rent previously accrued, he thereby becomes a general creditor as to such rent, and can have no claim for the same over a subsequent mortgagee, who files the affidavit required by statute (Secs. 1589, 1590, Comp. Laws) before such claim is reduced to judgment or the landlord has obtained any lien for the same on the mortgaged property.

Error, from a decree in favor of complainants, to the Third Judicial District Court, Grant County. Decree affirmed.

The facts are stated in the opinion of the court.

Elliott & Pickett for plaintiffs in error

The chattel mortgage is void as against the plain-tiffs in error, because it was not renewed by filing the affidavit stating the amount due, etc., within the time required by statute. Prince's Rev. Ed. Laws, N. M. 64. See, also, Wait's Acts and Defs., vol. 2, p. 199, sec. 18; Newell v. Warren, 44 N. Y. 244; Paine v. Mason, 7 Ohio St. 198; Edson v. Newell, 14 Minn. 228; National Bank of Metropolis v. Sprague, 20 N. J. 13; Seamon v. Eayer, 16 Ohio St. 209; Griffin v. Forrest (Mich. 1882), N. W. Rep. 603.

The filing of the affidavit of renewal must be within the time prescribed by statute. Jones on Chattel Mortgages, p. 262, sec. 287, and cases cited; Newell v. Warren, 44 Barb. (N. Y.) 258; National Bank of Metropolis v. Sprague, 20 N. J. 13.

. The claim of the plaintiff in error, Alvah E. Wolcott, for landlord's lien for $1,300 is prior to the chattel mortgage of the defendant in error, Nettie A. Ashenfelter, having commenced to attach to the property on the first of October, 1883, when it was first put into his building, and continued down until the hearing of this cause below, the property never having been removed from the building, and being in the building at the time the chattel mortgage to Nettie A. Ashenfelter was executed. Acts, N. M., 1884, p. 48, sec. 5; Prince's Rev. Stat. N. M., p. 407, sec. 14; Beall v. White, 94 U. S. 382; Fowler v. Ropley, 15 Wall. 338; Webb v. Sharp, 13 Wall. 14; Holden v. Sumner, 15 Id. 600; Longsheet v. Rennock, 20 Id. 575.

As to class of creditors who may take advantage of a chattel mortgage, which has not been renewed according to the statutes, see Prince's Rev. Stat. N. M., pp. 63, 64; 2 Jones on Chattel Mortgages, p. 265, sec. 292; Newman v. Tymeson, 12 Wis. 498; National Bank v. Sprague, 21 N. J. Eq. 530.

GIDEON D. BANTZ for defendants in error.

"Landlords shall have a lien on the property of their tenants, which remains in the house rented, for the rent due." Sec. 1537, Comp. Laws, 1884.

The words "house rented" are used in the sense of premises rented. Therefore, where the premises rented consist, as in this case, of a part of the house, the lien is lost by the landlord if he consents to the tenant's removal of his chattels from the rented premises; and the fact that the chattels are removed to other rooms in the same building is of no importance. By such removal a new and distinct tenancy was created between the landlord and tenant in respect to different premises, to which the tenant had the exclusive right of entry, and to which he removed the chattels. Bouv. Law Dict., tit. "House," citing 6 Mod.

214; Woodf. Land. & Ten. 178; King v. North, Bid-deck, 5 Ad. & Ell. 261; Henrette v. Booth, 15 C. B. N. S. 500; Finn v. Grafton, 2 Bing N. C. 617, and cases cited; 7 Taylor Land. & Ten., sec. 66.

The lien conferred by the statute arises out of the common law doctrine of distraint. The landlord could only distrain during the continuance of the term. Under statute 8 Anne, the landlord can not follow ten-ants chattels after the expiration of six months from removal from one apartment in a house to another. Taylor Land. & Ten., sec. 572.

At common law distress must be made upon some part of the demised premises, out of which the rent issued. Id., sec. 573.

By statute of 2 Geo. II, the landlord might pur-sue chattels if removed secretly and fraudulently.

Mrs. Ashenfelter had a valid mortgage as against Wright, even though it had never been recorded, and after her bill for foreclosure was filed, her lien was per-fected as against a mere general creditor of Wright. The rent of the premises on the north side of the hall, previously occupied, was no more than an ordinary debt, for which Wolcott, having no lien or a judgment, can not attack the validity of the mortgage. Boone Mortgages, sec. 251; Jones Chattel Mortgages, sec. 245; Bump. Fraud. Convey. [Ed. 1872], sec. 453.

LONG, C. J.—This cause is in this court on writ of error to the district court of Grant county. There Singleton M. Ashenfelter and Nettie A. Ashenfelter, his wife, brought their action to foreclose a chattel mortgage, and made parties thereto Frank J. Wright and Alvah E. Wolcott, who are the plaintiffs in error in this court. As against Wright, it is alleged in the bill of complaint that on the twenty-fourth day of February, 1886, Frank J. Wright made and delivered to Nettie A. Ashenfelter, wife of S. M. Ashenfelter, his promissory

note in the sum of $250, and at the same time that he
also made, executed, and delivered to her to secure said
note a chattel mortgage on a library situated in Silver
City, said county; that the mortgage was duly
acknowledged, and also properly recorded in time in
the said county of Grant. It is also averred that the
debt was, at the commencement of the action, unpaid
and past due. It is further alleged that the other
defendant in the action, Wolcott, also claimed to hold
a lien on the same library for $1,300, but that his lien,
if any existed, was for a much smaller sum, and was
subsequent to that claimed by the complainants.
Wolcott was made a party, that he might be required
to set up and establish his lien, so that the court could
ascertain and discover the amount thereof, and decree
as to priorities. The complainants made the usual
prayer for judgment, decree fixing their priority, and
for sale of the mortgaged property. Wolcott filed
demurrer to the complaint, which was overruled by the
court. Both Wolcott and Wright then answered the
bill, and upon the answers issue was joined, and
the cause referred to a master.

It is assigned here for error that the demurrer
should have been sustained, but as no reason for such
contention is shown in the oral argument or brief, and
as we are unable to perceive any defect in the bill of
complaint, we hold that assignment to be not well
taken. The master made a very careful and elaborate
report. He found, and so reported to the court, that
in 1883 Alvah E. Wolcott owned a building in the
town of Silver City, and on the first day of October
made a written lease to his codefendant, Frank J.
Wright, of two certain rooms in said building, said
rooms to be used by Wright for a law office, and the
lease to run for two years, at $45 per month, payable
monthly; that Wright occupied the two rooms until
the first of February, 1886, under said lease; and at

that date, on account of the nonpayment of rent for the two rooms during his occupancy under the written lease, owed Wolcott the sum of $945, as rent due and unpaid for said rooms to that date.   The master further found that Wolcott, at that date, desired to make other arrangements respecting said two rooms, and so he rented them then to another tenant, who took possession of them.   Wright, at that date, with Wolcott's consent moved out of the two rooms the library, which, before that date, had been in them, and altogether ceased to occupy them as a tenant.   Through the building in which the two rooms are situated is a central hall.   The two rooms occupied by Wright as aforesaid are in the building on the north side of the hall, and entered from it.   Wright, when he moved his library out of the two rooms, moved into and occupied a single room on the south side of the central hall, by and with the consent of Wolcott.   Possession was taken by Wright February 1, 1886, of the single room. At that time it was verbally agreed between Wright and Wolcott that the former should pay, as rent for the single room, $20 per month, nothing being said as to the time of payment.   Wright, after he moved into the single room, paid as one month's rent therefor, in February, $20.   He paid no further rent, but continued to occupy the room south of the hall to the rendition of the decree in the court below, and at that date, for rent of the single room, was indebted to Wolcott in the sum of $420, being the rental for said room to December 1, 1887.   The note and mortgage given by Wright to Mrs. Ashenfelter were executed on the twenty-fourth day of February, 1886, and the mortgage was duly recorded the next day.   At that time the library described in the mortgage was situated in the single room south of the central hall, and had been there at least twenty-three days.   There was then due and unpaid, as rent for the two rooms on the north

side of the hall by Wright the sum of $945. All these
facts are found by the master, and reported to the
court. The master found and the court decreed the
priorities, as between the two lienholders, Wolcott and
Mrs. Ashenfelter, to be as follows: That Wolcott
held, to the extent of $420, the prior and first lien over
Mrs. Ashenfelter; that Mrs. Ashenfelter, to the amount
of her mortgage, held the next and second lien. It
seems to have been apparent to the court that, after
payment of costs and expenses and the liens thus
decreed, there would be nothing left; so nothing is
decreed as to any residue. Wright does not assign
any separate error on his own behalf separately, but
joins in the assignment by Wolcott. These do not
relate to any matter affecting Wright separately, but
only refer to priorities.

The first question to consider is whether the court
erred in refusing to decree the $945 as a lien on the
library prior in time to the mortgage lien. The court
held, and in effect so decreed, that this lien was lost on
the library when Wright removed, by the
LANDLORD's lien: landlord's consent, out of the two rooms,
waiver.
and into the single room. If this ruling is
correct, then, as to that sum, Wolcott would be only a
general creditor, or, as it is sometimes expressed, "a
creditor at large," without any specific lien for the rent
thus accrued on the library. The two rooms first occu-
pied by the tenant and the single room last occupied
are entirely separate and distinct apartments, but plain-
tiffs in error contend, inasmuch as they are all under
one roof, in the same building, that the rent which had
accrued for the occupancy of the two rooms, and
which had attached as a lien on the library there situ-
ated, followed the library to the other room, and con-
tinued there, also, as a lien. The defendants in error
contend that the term "house" in the statute applies
to the separate apartments in the same building, where

these are rented separately; that where there are several rooms in one building, and each room is occupied by a separate tenant, as between the landlord and the several tenants, each apartment so occupied is a "house," within the meaning of the statute; and that when the landlord consents to a removal of a tenant's property from the separate room so occupied it is, in legal contemplation, a removal from the house, and the lien is lost. This question arises on the following section of the Compiled Laws: "Section 1537. Landlords shall have a lien on the property of their tenants, which remains in the house rented, for the rent due; and said property may not be removed from said house, without the consent of the landlord, until the rent is paid or secured." The lien is upon the property of the tenant which remains in the house, not upon the property which, with the landlord's consent, is removed from the house. The tenant may not remove the property from the house until the rent is paid. This is a right which the landlord may insist upon, but, if he voluntarily consents to the removal, he waives his lien. This statute is a substitute for the old remedy of distress for rent, a right exercised by the landlord during an early period. Says Mr. Taylor: "The common law of England, and most of her statutory provisions regulating a distress for rent, have been generally adopted in the United States." "In order to sustain a distress, the relation of landlord and tenant must be actually completed and exist between the parties. * * * It will, however, only continue so long as that relation subsists." Taylor, sections 558, 563. The rule of the common law is well stated in Williams v. Terboss, 2 Wend. 151, as follows: "At the common law, the landlord could only distrain property which was actually on the demised premises when he came for that purpose. His right to distrain must also have been exercised during the term. If the tenant fraudulently

removed his property and effects from the demised premises, either before or after the rent became due, the landlord could not follow and seize them for rent, unless they were removed by the tenant after the landlord had actually come to distrain, and had view of the goods on the premises." Our statute is an outgrowth of this principle of common law of distress for rent, and, if the landlord voluntarily consents to a removal of the goods from the demised house, his lien is lost, because the statute expressly provides the lien attaches against the goods which remain in the house. The right is itself an incident of a particular tenancy, and arises out of it. This statute contemplates there must be, to create the lien, a landlord, a tenant, a house rented, and goods in that particular house. In case of a building, erected with many rooms, for the purpose of letting separate apartments to different tenants, no occupant is a tenant of the whole building, but only of a particular apartment, which apartment is the tenant's house. Over that he has full control. One entering there without his consent is a trespasser. It is his house. The lien grows out of the tenancy as to a house rented. Wright did not occupy the whole building, and he had no house rented, if the word "house" can apply only to the whole building. This question, however, is settled on authority.

PREREQUISITES of lien; section 1537, construed.

Taylor, in his work on Landlord and Tenant, page 187, quotes from the case of Winslow v. Henry, 5 Hill, 481, with approval: "As rent can not issue out of a mere easement or incorporeal hereditament, upon the demise of a room, with a right of common passage along an entry leading from such room into the public street, it was held that the landlord could not seize goods of the tenant kept in such common passageway." Bukup v. Valentine, 19 Wend. 554, is exactly in point. The facts of that case are as follows: The defendant,

Valentine, demised to the plaintiff, for a term which ended May 1, 1835, the lower part of a house in Mulberry street, New York, consisting of all the lower story, the two front joint bedrooms, the front basement kitchen, with half the cellar and privilege in the yard. Valentine, at the same time, rented to one Merit the upper part of the same house, consisting of certain rooms, and also the back basement kitchen and half the cellar. May 1, 1835, Merit left that part of the house he had previously occupied; and the plaintiff, under a lease from Valentine for one year, removed into those apartments vacated by Merit. At the same time one Marshall became tenant of the apartments which Valentine had at first occupied. The plaintiff had failed to pay his rent for the lower part of the house which he first occupied, and for rent due for those apartments Valentine distrained the plaintiff's goods located in the upper part of the building, in the apartments he last occupied. The plaintiff brought replevin for the goods, and failed in the court below. He appealed to the supreme court, and it was contended there by Valentine that plaintiff had not removed from the demised premises. The court held otherwise, and reversed the case. The court say: "It is now said that the removal to another part of the same building was not a removal from the demised premises. I can not yield to this argument. Both before and after the rent fell due there were two tenants in the house, each having the exclusive enjoyment of a different part of the building. On the first of May, the plaintiff gave up the rooms he had previously occupied, and removed into other apartments. He ceased to be a tenant of the rooms he had occupied in 1834, as fully as though he had removed into an adjoining building owned by the same or another landlord." So this court say with respect to Wright. The case is exactly in point, correct, as we think, in principle, and

we are content to follow it, and therefore hold the rent accrued for the two rooms did not follow as a lien on the library to the single room across the hall. As to the $945 rent due Wolcott for the two rooms occupied by Wright, the former, having waived his landlord's lien by consenting to the removal of the property, at least as between himself and a subsequent mortgagee, it is a question whether in the court below Wolcott, being only a general creditor, was in a position to attack the mortgage of Mrs. Ashenfelter, on the ground that she had not complied with the statute requiring an affidavit to be filed within thirty days next preceding the expiration of one year from the filing of the chattel mortgage. Mrs. Ashenfelter had filed her affidavit, but not within the thirty days. She filed it several days too early, as at the time of such filing the thirty days specified in the statute had not yet commenced to run. If the affidavit is filed or exhibited too soon, or before the thirty days begin to run, such filing is nugatory, and of no effect. The following authorities are to that effect. Jones Chat. Mortg., sec. 287; Boone Mortg., sec. 250; Nat'l Bank v. Shroyer, 20 N. J. Eq. 13; Newell v. Warner, 44 Barb. 258.

GENERAL creditor: subsequent mortgagee: priority of mortgage lien.

The chattel mortgage must be regarded as if the affidavit had not been filed. Our statute provides as follows: "Section 1589. Every mortgage so filed, shall be void as against the creditors of the person making the same, or against subsequent purchasers or mortgagees in good faith, after the expiration of one year after the filing thereof, unless, within thirty days next preceding the expiration of the term of one year from such filing, and each year thereafter, the mortgagee, his agent or attorney, shall make an affidavit exhibiting the interest of the mortgagee in the property at the time last aforesaid, claimed by virtue of such mortgage, and, if said mortgage is to secure the payment of

money, the amount yet due and unpaid; such affidavit shall be attached to and filed with the instrument or copy on file to which it relates." The record in the case before us discloses that Mrs. Ashenfelter had not taken possession of the mortgaged property, so at the commencement of the action, in the absence of the statutory affidavit, and without possession having been taken by the mortgagee, her mortgage under the statute would be of no effect as to such creditors of Wright as were in situation to assert its invalidity. The authorities before cited give construction to a statute like our own, and under them it is clear, as against creditors who are in a position to raise the question, the chattel mortgage is void. Was Wolcott in that position in the court below? He had not reduced his claim to judgment. He had no specific lien on the library in any form. At best, he had only the right to sue his debtor. In the meantime, Mrs. Ashenfelter had the right, if she could peaceably obtain possession, to do so, or to proceed and foreclose her mortgage. Is there any rule which would require that she should be restrained of her right to foreclose, and wait the movements of the general creditors, so long as the mortgage remained valid as between her and the debtor? The mortgage contained a provision that, upon default in payment, she might take actual possession of the property wherever she could find it. Default was made, and her rights as against Wright to possession was perfect. If she had taken actual possession, her right under the mortgage would have been as complete as if she had filed the affidavit required by statute. Controversy arose as to possession between Mrs. Ashenfelter and Wolcott, so she procured a receiver to be appointed to hold the property, and the court decreed a sale thereof. As to the $945, Wolcott had not then procured either a judgment or lien by attachment. In this state of

things, if Wright had turned over to the mortgagee, possession, notwithstandiug her failure to comply with the statute, she would have been preferred to the general debt of Wolcott; not so as to the specific landlord's lien, for the single room. That, however, is decreed to be prior to Mrs. Ashenfelter's, and is out of the case. If, then, she could have received possession, and thus have perfected her right, which had become suspended by failure to file the statutory affidavit, we can see no reason why she might not have properly invoked the aid of the court to reduce the property to cash, and apply it to the discharge of her specific lien as against Wright, unless some lienholder, with a right to question the legality of her mortgage, interposed. If Wolcott could attack the chattel mortgage, then any general creditor could do so. It would, to say the least, be illegal to hold that a creditor, without any lien upon a chattel, or right thereto, in the absence of a judgment which might by execution be enforced against such chattels, could call upon a court of equity to remove even a void lien from the property, constituting an apparent cloud upon it. Without a specific lien on the chattel, what benefit could such a creditor derive? He could not sell the chattel without judgment and execution. A consideration of some of the cases will indicate the construction which should be placed upon the words of the statute, "shall be void against creditors." In Van Heusen v. Radcliff, 17 N. Y. 580, the court say: "When a conveyance is said to be void against creditors, the reference is to such parties when clothed with their judgments and executions, or such other titles as the law has provided for the collection of debts." Mr. Bump, in his work of Fraudulent Conveyances, page 453, gives a clear elucidation of this subject: "It is commonly said that a fraudulent conveyance is void against creditors, but this must be taken in a limited sense. The law provides a mode for determining the rights of

all parties, and does not permit even a creditor to act
as judge in his own case.   A fraudulent conveyance,
moreover, does not confer any additional rights upon
creditors.   They can not seize the property of their
debtor without any legal process, and appropriate it of
their own accord to the satisfaction of their demands.
*   *   *   They may cause it to be appropriated to the
payment of their debts, but can only do so in the mode
which the law prescribes.   *   *   *   Consequently the
expression that a fraudulent transfer is void against
creditors simply means that the rights of creditors as
such are not, with respect to the property, affected by
such transfer, but that they may, notwithstanding the
transfer, avail themselves of all the remedies for collect-
ing their debts out of the property, or its avails, which
the law has provided in favor of creditors, and that in
pursuing those remedies they may treat the property
as though the transfer had not been made; that is,
as the property of the debtor.   The transfer
is ineffectual to shield the property in the hands
of the grantee from the just claims of the credit-
ors of the grantor, when those claims are prosecuted
against it in the manner pointed out by the law.   His
title, however, is good against even creditors, unless
they protect themselves against him by pursuing that
prescribed course by which alone the property can be
made available for the satisfaction of debts.   A 'cred-
itor at large,' as it is termed, can not impeach the con-
veyance, but only a creditor having some process on
which the property may be lawfully seized, and by
which it is made liable, either immediately or ultimately,
to be appropriated in satisfaction of his debt.   *   *   *
Before a creditor can impeach the transfer, he must
have an execution, attachment, or some other legal
process which authorizes the seizure of the property.
This process may be a warrant of distress or an attach-
ment, as well as on execution.''   Although unable to

examine all the cases cited by Mr. Bump in support of this position, one which we believe to be well established, we append them for reference. Andrews v. Durant, 18 N. Y. 496; Rinchey v. Stryker, 26 How. Pr. 75; Schlussel v. Willett, 32 Barb. 615; 12 Abb. Pr. 397; 22 How. Pr. 15; Tiffany v. Warren, 37 Barb. 571, 24 How. Pr. 293.

In Owen v. Dixon, 17 Conn. 496, a well considered opinion is given, from which the following quotation is made: "It is a familiar principle that a fraudulent conveyance of property is void as to the creditors of the vendor. By this is meant that the rights of a creditor as such are not, with respect to the property, affected by such conveyance. * * * A 'creditor at large,' as it is termed, can not impeach the conveyance, but only a creditor having some process on which the property may be lawfully seized, and by which it is made liable" * * * for the debt. We think the same rule of construction established with respect to conveyances fraudulent as to creditors should be applied to the term "void as against creditors," used in our statute. There is authority, however, more directly in point, giving that construction to statutes to the same effect as the one quoted. In New York the statute on the subject under consideration is much like our own. In Thompson v. Van Vechten, 27 N. Y. 582, in considering who might attack a chattel mortgage for want of the statutory affidavit, the court say: "It is true the mortgage can not be legally questioned until the creditor clothes himself with a judgment and execution, or with some legal process against his [the debtor's] property; for creditors can not interfere with the property of their debtors without process." It seems to us clear that until Wolcott had by some legal means procured a lien on the property, being only a general creditor, or, as some books express it, a "creditor at large," he could not appeal to a court of equity to

remove by its decree a mortgage good against the debtor. The conclusion reached on this point is much strengthened by the terms of section 1590 of the Compiled Laws. This section and section 1589 must be construed together, as they clearly relate to the same subject. "Sec. 1590. If such affidavit be made and filed before any purchase of such mortgaged property shall be made, or other mortgage deposited, or lien obtained thereon in good faith, it shall be as valid to continue in effect such mortgage as if the same had been made and filed within the period above provided." This must remove all substantial doubt. If the affidavit provided for in section 1589 is not filed within the thirty days required, then the mortgage is void as to creditors; but if such a creditor omits to take such action as to obtain a lien thereon before the affidavit is thereafter filed, and the mortgagee files his affidavit as required by section 1589, it operates to revive the mortgage against all creditors who have not in the meantime obtained liens. Failure to file the affidavit required within the thirty days suspends the operation of the mortgage as against general creditors, and if they reduce their debts to judgment against the mortgagor, and levy on the property of the mortgagor, while the mortgage is suspended for want of the statutory affidavit, they secure priority, or, if they levy attachments, the same result is reached; but, if they omit to take some such action, the mortgage lien may be revived. This latter section gives construction to the term "creditors," as used in the preceding one, and limits that term to such as may, by some legal means, secure a lien on the mortgaged property. As to the $945, Wolcott, being only a general creditor, without specific lien on the library, and being without judgment upon which execution might issue, could not attack the mortgage of Mrs. Ashenfelter, the same being good and valid against the mortgagor. We find no error in

the record of the court below, and accordingly the judgment and decree there entered are affirmed.

WHITEMAN, LEE, and McFIE, JJ., concur.