[No. 2860. Sept. 21, 1925.]

DEES v. DISMUKE et al.

### SYLLABUS BY THE COURT

An owner leased premises for a term to three persons jointly. Before the end of the term two of the persons withdrew, and the remaining party discharged the lessee covenants with the exception of the payment of rent for one month due thereunder. The owner, at the expiration of the first term, leased the premises to the tenant in occupancy for a further term of years. **Held** that, the second was a new lease, and hence a mortgage of personal property made by such continuing tenant during the first term, but prior to the commencement of the new term, created a lien superior to that of the landlord for rent of such second term, it being considered by appellant that the mortgage lien is inferior to that of the landlord for the rent under the original term.

Appeal from District Court, Socorro County; Owen, Judge.

Suit by C. M. Dees against W. B. Dismuke and another to foreclose a chattel mortgage. From the judgment, plaintiff appeals. Reversed and remanded, with instructions.

Chas. H. Fowler, of Socorro, for appellant.

J. A. Lowe, of Socorro, for appellees.

#### OPINION OF THE COURT

BICKLEY, J.   The plaintiff (appellant) brought suit in the district court of Socorro county to foreclose the chattel mortgage described in the complaint.   He joined as defendants W. S. Dismuke, the maker of the mortgage and the note secured thereby, and J. A. Montoya, who claimed an interest in the mortgaged property by virtue of an alleged landlord's lien.

By appropriate pleadings the issues are joined be, tween the plaintiff and the defendant J. A. Montoya, as to the priority of liens.   The record shows that the facts were agreed upon by the parties, and show that prior to the giving of the mortgage to the plaintiff, C. M. Dees, by the defendant, W. S. Dismuke, the premises in question were leased by the defendant, Montoya, to W. S. Dismuke, Hank Thurman, and W. J. Tennyson; that prior to the giving of the mortgage Tennyson and Thurman withdrew from the business, and the premises remained under the charge and control of Dismuke.   About the beginning of the year 1921, Dees came in for the purpose of buying one-half interest in the property of Dismuke, but the arrangements never were completed, it appearing that Dees put $2,000 into the business, and it was to secure the payment of this money that the notes and mortgage were given by Dismuke on August 5, 1921.   The lease heretofore mentioned from Montoya to Dismuke and others expired in November, 1921.   At the expiration of the aforesaid mentioned lease, Montoya made a new lease of the premises to Dismuke alone.   Dismuke held under this new lease through the remaining months of 1921, all of 1922, and up to February 1, 1923.   There is due under the old lease to Dismuke, Thurman, and Tenny-

son the sum of $100, being rent for the month of October, 1921, all other rents due under the original lease having been paid. The plaintiff admits that the $100 due under the old lease is a lien in favor of Montoya superior to his chattel mortgage lien, but claims that his chattel mortgage lien is superior to other amounts due to Montoya under the second lease. The plaintiff took the chattel mortgage with knowledge that the first lease was existing at the time, and Montoya knew that the mortgage was in existence and in force and effect when the second lease was made.

The court rendering judgment stated that the parties in the presence of the court had stipulated as to all the facts involved in the issues of the cause, and concluded from such facts that the landlord's lien, claimed by the defendant Montoya upon the goods and chattels, the subject-matter of the suit, is a prior and superior lien to the mortgage sought to be foreclosed by the plaintiff, Dees, and rendered judgment against the defendant Dismuke for the sum of $1,040, being apparently the amount of rent due from Dismuke to Montoya under both of the leases in question, ordering a foreclosure of said landlord's lien, and also rendering judgment in favor of the plaintiffs against Dismuke for the sum of $2,000 with interest and attorney's fees in addition thereto, and that the chattel mortgage aforesaid be foreclosed, subject, however, to the landlord's lien theretofore in the said judgment referred to.

The case now is here on appeal.

The appellant in his brief states that the errors assigned may be reviewed under two points: (1) That no landlord's lien is established; and (2) that the landlord's lien, if established, is not superior to the mortgage lien to the full extent of the debt of Dismuke to Montoya. Under the first point, appellant argues that the defendant Montoya, who answered setting up by way of affirmative defense the existence of his landlord's lien, fails to show by the evidence that he had not waived his lien by the taking of collateral security for the rent due to him under the leases in question.

From examination of the record, it would appear that the appellant is not in a situation to urge this point on account of certain admissions made by him at the trial concerning the existence of a landlord's lien, at least to the extent of $100, being for rent due under the original lease, and for this and other reasons we will not consider the proposition advanced by appellant under his first point. Otherwise we think that the appellant should prevail to the extent of the relief he demands.

The lien of landlords is provided for in article 2 of chapter 57, Code of 1915, as amended. Section 3334, being a portion of said chapter, provides:

"Landlords shall have a lien on the property of their tenants which remains in the house rented, for the rent due, and said property may not be removed from said house without the consent of the landlord, until the rent is paid or secured."

But chapter 65, Session Laws of 1917, section 19 thereof, amended the section quoted above to read as follows, the underscored words being the portion added by amendment.

"Landlords shall have a lien on the property of their tenants which remains in the house rented, for the rent due, or to become due by the terms of any lease or other agreement in writing, and said proerty may not be removed from said house without the consent of the landlord, until the rent is paid or secured."

It will be observed that an entirely new element was injected into the landlord lien law by this amendment. Prior thereto the landlord only had a lien for the rent due. By the amendment, rent thereafter to become due under the tenancy is protected by the lien, provided, however, that this amendment shall not apply to tenancies created by parol but only to such tenancies as are created by "lease or other agreement in writing." The reason for this is apparent—strangers to the agreement of tenancy having dealings with the tenant may ascertain upon the initiation of such dealings as to whether or not any rent is due from the tenant to his landlord. If the landlord is to have a lien for rents for a period not yet accrued, creditors of the tenant should at least be advised of the terms

and period of the tenancy in order to be advised of the extent of the rights of the landlord to claim a lien for rents which are to become due. Therefore the Legislature provided, with respect to the lien for rents yet to become due that they must be fixed by the terms of a lease or agreement in writing.

Appellant acknowledged the superiority of the landlord's lien over the mortgage lien to the extent of the rent which was due under the lease existing at the time his rights accrued under the mortgage, but claims that his mortgage became a lien superior to the lien of the landlord under the second lease. Appellee contends that the second lease was merely a renewal lease, and that the relation of landlord and tenant existing between Montoya and Dismuke was a continuing one, and that the lien for rent was a continuing one. There is nothing in the facts stipulated which indicates that there was any covenant in the original lease for a renewal thereof, and nothing in the record to show that the second lease was a renewal of the first lease. In fact, the circumstances indicate otherwise, because the first least was made to Dismuke, Thurman, and Tennyson, whereas the second lease was made to Dismuke alone. The rule as to priorities between the lien on the mortgage and the lien of the landlord under such circumstances is stated in 11 C. J. at page 658, as follows:

"**Effect of Renewal of Tenancy.** A valid mortgage lien created during one term of a lease is superior to a landlord's lien, existing during a second term of lease to the same tenant, that had not begun or been contracted for when the mortgage was executed. * * *"

We have read the cases cited by the textwriter, and they sufficiently support the text.

In Gasnick v. Steffensen, 112 Iowa, 688, 84 N. W. 945, an owner leased a farm for one year to two parties jointly, with the privilege of continuing the lease. Before the end of the first year the parties concluded to no longer work the farm together, one of them securing the lease for the following year. It was held that the second was a new lease, and hence a mortgage of personal property, made by such continuing tenant

prior to the commencement of the new term, created a lien superior to that of the landlord for rent of such term under Code, § 2992, providing that only such property as was used during the term shall be subject to the landlord's lien. The statute cited reads as follows:

"A landlord shall have a lien for his rent upon all crops grown upon the leased premises, and upon all other personal property of the tenant which has been used or kept thereon during the term and not exempt from execution. * * *"

In the course of the opinion, the court said:

"The original lease was to Steffensen and Mathiesen jointly and did not lease a moity to each. They took possession of it, and worked it in common. Under the terms of the lease hey together might exercise the privilege of continuing three or five years longer, but there was no stipulation therein that either one alone might claim that right, and, in the absence of such an agreement, it cannot be claimed that the lessor would be bound to grant such extension to either one alone. It can make no difference that Steffensen and Gasnick agreed that the former should work the place on the terms contained in the written lease, for they were at perfect liberty to adopt them and make them the basis of their agreement, but the agreement itself was a new one, and for a new term. The written lease expressly fixed the term at one year, and it would have terminated at the end thereof, in the absence of some act or declaration on the part of the joint tenants indicating a desire to continue it. There was never anything of this kind done."

That was a stronger case for the landlord than the case at bar, because it does not here appear that the first lease contained any covenants of removal even to the joint lessees.

In passing upon a case similar to the present one and in construing an act of the same import as our own, the Court of Appeals of Kentucky (Lyons v. Deppen, 90 Ky. 305, 14 S. W. 279), quotes the act, and comments as follows (the underscoring is ours):

" 'Section 13. A landlord shall have a superior lien on the produce of the farm or premises rented, on the fixtures, on the household furniture and other personal property of the tenant, or undertenant, owned by him, after possession is taken under the lease; but such lien shall not be for more than one year's rent due, or to become

due, nor for any rent 'which has been due for more than one hundred and twenty days. But if any such property be removed openly from the leased premises, and without fraudulent intent, and not returned, the lien of the landlord shall be lost as to it, unless the same be asserted by proper procedure within fifteen days from the day of removal.' Gen. St. 1888, c. 66, art. 2, § 13.

"The landlord has a lien upon property of the tenant, described in section 13 in virtue alone of an express or implied contract of lease, and when the period of such lease ends, the lien that is an incident of it necessarily terminates, except that by express provision it can be enforced as to property to which it had already attached, within 120 days after the rent becomes due, which might be at the same time the lease expires. But such lien does not prevail against any other valid lien created before the beginning of the term of lease, or before the property is carried upon the leased premises. It thus results that a valid mortgage lien created during one term of a lease must, under the statute, be regarded as superior to the landlord's lien existing during a second term of lease to the same tenant, that had not begun, nor was contracted for when the mortgage was executed. Otherwise, a mortgage valid in all respects, and enforceable between the parties to it, might be rendered inoperative at the mere will of a third party, who had, before expiration of the first term of lease, indicated no intention to lease for a second term, nor by contract bound either himself or the tenant for a second term. For protection of the landlord intervening mortgages are not permitted by the statute to prevail against his lien existing under contract of lease already made. But for protection of other creditors the statute, according to fair import of the language used, as well as reason, makes a mortgage lien created before execution of a contract of lease superior to a landlord's lien existing under such contract," Lyons, etc., v. Deppen, 90 Ky. 305, 14 S. C. 279.

In the case of Upper Appomattox Co. v. Hamilton, 83 Va. 319, 2 S. E. 195, the syllabus of the court briefly states the facts and the decisions as follows:

"A tenant under a lease for a term of years, which contained no covenant or stipulation for a renewal, executed a deed of trust which conveyed the machinery and other personalty on the premises. Thereafter, but before registration thereof, an agreement for a renewal of the lease was entered into. Held, that possession under the agreement of renewal was to be treated as a new tenancy; and that under Code Va. 1873, c. 134, §§ 11, 13, which provide that if the goods of a lease, when carried on the leased premises, are subject to a lien which is valid against the lessee's creditors, his interest only in such goods shall be liable to distress for rent, the lien of the trust deed took priority

over the landlord's lien for rent accruing after the expira-
tion of the original term."

In the opinion of the court, the fact that the original
lease contained no covenant for a renewal or for the
privilege of a further term was emphasized, and the
court said:

"But, taking it to be a lease, and to have bee nintended
as such, it clearly is not a 'renewed and extended' lease,
as contended for by the learned counsel for the appellant;
for it was not made in pursuance of any covenant or stipu-
lation contained in the original lease, and it not only cre-
ated a new term, after the regular expiration of the first,
but it prescribes terms and conditions materially different
in several particulars from those contained in the original
lease of January 23, 1873. The tenancy created by it
was therefore not the same tenancy in existence when the
deed of trust to Baldwin was executed, the result of which
is that the lien created by the deed of trust is prior in time
to the commencement of the tenancy under which rent is
claimed by the appellant in the present case. In other
words, to use the language of the opinion in City of Rich-
mond v. Duesberry [27 Grat. (68 Va.) 210], supra, the
property conveyed by the deed of trust 'must be held
subject to the same conditions as if, when carried on the
leased premises, it was subject to a lien valid against the
creditors of the Petersburgh Cotton Mills."

Appellee cites the case of Otero v. City of Albuquer-
que, 22 N. M. 128, 158 P. 798, as supporting his con-
tentions. We do not think that case avails appellee
anything. The case there was between the original
parties, and the question arose as to the effect of a
holding over. It is therein stated that, where a tenant
holding over after the expiration of his lease, without
any express agreement, but with assent of his landlord,
he holds on the same terms as those of the original
lease, including all the covenants thereof, unless made
inapplicable by changed conditions. And the court
quoted from a New York case the phrase:

"The holding over constitutes merely an enlargement of
the term, and the lease is applied thereto with the same
force as though it had been re-executed."

That is doubtless good law as to the original parties
to the lease, but here the rights of a third party are
involved, and there is no holding over, but a new,
distinct, entire, and separate written lease made and

executed between parties not identical with those of the first lease.

Even in case of mere holding over, where the rights of a third party were involved, it was held by the Supreme Court of Virginia in the case of Richmond v. Duesberry, 27 Grat. (68 Va.) 210, that the holding over by a tenant was under a new lease, and, the lien in favor of the mortgagee having been upon it when that lease commenced, such lien is valid against the landlord's lien for rent after the expiration of the original term. In the opinion, the court said:

"Now, Cobb having leased for one year, and Mosely, who took his lease, having held over after the expiration of the lease without any further contract, the tenancy must be regarded as a tenancy from year to year. Archbold on Land, and Tenant, 65, 66, and 68. (marg.); Sherwood v. Philipps, 13 Wend. [N. Y.] 479, and cases cited in the opinion of the court.

"It follows, therefore, that the lease of Cobb of which Mosely was the assignee terminated on the 1st day of January, 1872. On that day a new term commenced. The rent for the whole year 1871 had been paid. The deed of trust to Call was executed and recorded on the 10th of March, 1871. At the commencement of the new tenancy, to wit, on the 1st January, 1872, not a dollar of rent was due, nor was any due in arrear until the latter part of 1872. The lien on the furniture was therefore created before the commencement of the tenancy. That furniture was on the leased premises, subject to a lien created before the tenancy for the year 1872 commenced, and not after—and in contemplation of the statute, construing both sections together, must be held subject to the same conditions as if when carried on the leased premises it was subject to a lien valid against the creditors of Mosely.

"The liability for the rent in this case came long after the lien was created; and the tenancy during which the lien was created had expired and every dollar due under that lease had been paid. A new tenancy had commenced with an existing lien upon the furniture created and recorded long before it began."

From all of the foregoing, it appears that the judgment of the trial court must be reversed and remanded, with instructions to enter judgment in accordance with the view herein expressed, and it is so ordered.

PARKER, C. J., and WATSON, J., concur.