522 P.2d 812

**CHESSPORT MILLWORKS, INC., a New Mexico corporation, Plaintiff-Appellee,**

v.

**Paul D. SOLIE, Defendant-Appellant.**

**No. 1315.**

Court of Appeals of New Mexico.

May 1, 1974.

Theodore R. Johnson, Williams, Johnson, Houston, Reagan & Porter, Hobbs, for defendant-appellant.

Sam Laughlin, Jr., Girand & Richards, P. A., Hobbs, for plaintiff-appellee.

## OPINION

WOOD, Chief Judge.

The trial court held that a lien on personal property based on financing statements and security interests was superior to a landlord's lien for rents due and to become due. It concluded that defendant had wrongfully withheld certain property from plaintiff, gave judgment for plaintiff in its replevin action but held that damages for the wrongful withholding had not been proved. Defendant appeals. The issues discussed are: (1) priority as between the statutory landlord's lien and a security interest under the Uniform Commercial Code; (2) whether there was a landlord's lien; and (3) the extent of the landlord's lien.

Defendant leased real property to the partnership of Phillips and Kight, doing business as New Mexico Millworks. The term of the lease was November 1, 1965 to October 31, 1973. The rent was $225.00 per month.

Phillips incorporated the business in April, 1967; thereafter, it was known as New Mexico Millworks, Inc. This corporation occupied and used the premises covered by the lease and paid all rentals pursuant to the lease through September 1, 1971. This corporation is now defunct.

During the existence of New Mexico Millworks, Inc., Murdock advanced money to the corporation and took security interests in property owned by the corporation. The earliest security agreement and financing statement referred to in the trial court's findings of fact is dated September 17, 1970.

On December 16, 1971, New Mexico Millworks, Inc. notified Murdock that it would be unable to pay the indebtedness and also notified Murdock of its decision to deliver possession of all collateral to Murdock.

On December 17, 1971, Murdock gave notice of private sale to be held on January 6, 1972. Defendant received this notice. The sale was held as scheduled. At the sale, Murdock purchased all inventory and assets of New Mexico Millworks, Inc. Thereafter, Murdock transferred title to the inventory and assets to plaintiff. Plaintiff is a corporation; Murdock is its sole stockholder.

On December 23, 1972, defendant, by letter, informed New Mexico Millworks, Inc. and Murdock that he claimed a landlord's lien on property of New Mexico Millworks, Inc. located in or on the leased premises.

On January 21, 1972, defendant prevented plaintiff from removing property from the leased premises. On that date he locked the leased premises. Some of the property on the premises had belonged to New Mexico Millworks, Inc. prior to the private sale.

On January 26, 1972, defendant gave notice that unless the indebtedness claimed to be owing from New Mexico Millworks, Inc. was paid within 10 days, [see § 61–3–11, N.M.S.A.1953 (Repl.Vol. 9, pt. 1, Supp.1973)], the property held by defendant would be sold pursuant to § 61–3–12, N.M.S.A.1953 (Repl.Vol. 9, pt. 1).

*Priority as between landlord's lien and security interest.*

This point assumes that defendant had a valid landlord's lien against property of New Mexico Millworks, Inc. which was located on the leased premises. No attack is made on Murdock's security interest, the private sale and the subsequent transfer of title of property purchased at the sale from Murdock to plaintiff. The issue is which lien was prior—the landlord's lien or the lien based on the security interest.

The article of the Uniform Commercial Code dealing with secured transactions contains §§ 50A–9–101 through 50A–9–507, N.M.S.A.1953 (Repl.Vol. 8, pt. 1). Section 50A–9–104(b), supra, exempts a landlord's lien from the article on secured transactions. Section 50A–9–104(c), supra, also exempts "a lien given by statute" except as provided in § 50A–9–310, supra. Compare § 50A–9–102(2), supra. Under the fact situation of § 50A–9–310, supra,

there may be a lien having priority over a perfected security interest, such as Murdock's. Defendant does not claim a priority on the basis of § 50A–9–310, supra.

The landlord's lien is provided by § 61–3–4, N.M.S.A.1953 (Repl.Vol. 9, pt. 1). Section 61–3–8, N.M.S.A.1953 (Repl.Vol. 9, pt. 1) states: "The priorities of liens provided for by this act [61–3–1 to 61–3–13] shall be fixed as to several lien claimants as of the time of serving notice or of filing suit as provided in section * * * [61–3–11]." This provision pertains to priority between liens established by §§ 61–3–1 to 61–3–13, supra; it does not apply to liens not covered by these sections. Gathman v. First American Indian Land, Inc., 74 N.M. 729, 398 P.2d 57 (1965). Murdock's security interest is not covered by these sections.

Accordingly, in this case, no statutory provision determines the priority between the landlord's lien and the security interest.

■ In Gathman v. First American Indian Land, Inc., supra, the issue was the priority between a judgment lien which attached in February, 1962 and a landlord's lien based on a lease entered in April, 1961. Gathman, supra, held the landlord's lien to be prior, stating: "The landlord's statutory lien attached at the beginning of the tenancy for rental due or to become due under the terms of the lease."

New Mexico decisions, relied on by plaintiff, are not to the contrary. Owen v. Waukesha Engine and Equipment Company, 74 N.M. 59, 390 P.2d 439 (1964) does not involve a landlord's lien. In Dees v. Dismuke et al., 30 N.M. 528, 240 P. 198 (1925), the landlord's lien was conceded to be prior to a chattel mortgage entered subsequent to the original lease. The issue litigated was the priority between the chattel mortgage and a second lease executed subsequent to the chattel mortgage. Ross v. Overton, 29 N.M. 651, 226 P. 162 (1924) does not deal with priority of liens. In Ross, supra, a landlord forcibly took possession of a tenant's property. The issue involved the enforcement of a landlord's lien.

Under Gathman v. First American Indian Land, Inc., supra, defendant's statutory landlord's. lien attached on November 1, 1965. Murdock's security interest was perfected September 17, 1970. The landlord's lien should have been accorded priority.

*Whether there was a landlord's lien.*

Plaintiff would avoid the priority to be accorded the landlord's lien on the basis that no landlord's lien existed. The several contentions, and our answers, follow.

■ (a) Plaintiff seems to contend that once the sale on January 6, 1972, occurred, title to the property was exclusively in Murdock. On this basis, it is asserted that defendant had no right to "seize" the property on January 21, 1972. The answer is that if defendant had a landlord's lien it was prior to any security interest held by Murdock and the private sale to Murdock did not eliminate the prior landlord's lien. See § 50A–9–504(4), supra.

■ (b) Relying on Ross v. Overton, supra, plaintiff asserts that defendant wrongfully seized the property on January 21, 1972. The answer is that there was no seizure. The property was on defendant's premises—the leased land. What defendant did was to prevent plaintiff from removing the property. If defendant had consented to the removal of the property, he would have lost his lien. Section 61–3–7, supra.

■ (c) Relying on Ross v. Overton, supra, plaintiff contends defendant had no lien because defendant took no steps to enforce the lien prior to January 26, 1972. This contention mixes two concepts—the existence of the lien and its enforcement. Section 61–3–4, supra, and Gathman v. First American Indian Land, Inc., supra, provide for the lien. Section 61–3–11, supra, pertains to enforcement. Plaintiff's contention is that the lien was lost because defendant had not taken steps to enforce

the lien by January 21, 1972, the date defendant prevented removal of the property. No authority is cited in support of this argument. Nothing in the statutes provides that if defendant preserves his lien by preventing removal of the property, he nevertheless loses his lien if steps for enforcement of the lien have not been taken by the day removal of the property is prevented.

■ (d) The landlord's lien for future rents, provided by § 61-3-4, supra, is based on a "lease or other agreement in writing." Plaintiff contends this basis does not exist between defendant and New Mexico Millworks, Inc. The lease in evidence is between defendant and the partnership. There is no evidence of a separate lease between defendant and New Mexico Millworks, Inc. Plaintiff claims there is no evidence that New Mexico Millworks, Inc. ever assumed or was assignee of the partnership lease. The trial court found that New Mexico Millworks, Inc. occupied and used the leased premises and paid rental pursuant to the lease for over three years. These facts establish, prima facie, an assignment of the lease to New Mexico Millworks, Inc. Abbott v. Bob's U-Drive, 222 Or. 147, 352 P.2d 598, 81 A.L.R.2d 793 (1960); Jensen v. O. K. Investment Corporation, 29 Utah 2d 231, 507 P.2d 713 (1973); 3A Thompson on Real Property, § 1208 (1959 Repl.). Nothing contradicts this prima facie showing.

■ (e) Plaintiff contends the lease could not be assigned because, in the lease, the partnership agreed not to assign without the lessor's written consent. Such a provision is only for the benefit of the lessor and the lessor may waive such a provision. Merrill v. Klein, 51 N.M. 498, 188 P.2d 609 (1947). This provision did not prevent an assignment.

■ (f) Because there was no "writing" between defendant and New Mexico Millworks, Inc., plaintiff contends that the occupancy of the premises by New Mexico Millworks, Inc. was a tenancy from month to month; that a landlord's lien would apply only to unpaid monthly rentals; that the oldest unpaid monthly rental is for October, 1971; and, thus, that Murdock's security interest dating from September, 1970 is prior in time to any landlord's lien. The answer is that the lease, prima facie assigned to New Mexico Millworks, Inc., was an assignment for the term of the lease. 3A Thompson on Real Property, supra. Whether the priority of the landlord's lien dates from the original lease or from the assignment, Murdock's security interest is subsequent in time. Dees v. Dismuke et al., supra, on which plaintiff relies, is distinguishable on its facts.

■■ (g) In July, 1969 defendant sued the partnership for rent due under the lease. In June, 1970 judgment was entered for rent accrued, but unpaid, since March, 1969. Plaintiff contends the lease was terminated by the filing of this lawsuit. The answer is that the judgment affirmed the lease. Plaintiff also contends that the complaint in this lawsuit was an admission by defendant that he considered the partnership, rather than New Mexico Millworks, Inc., to be the lessee. There is nothing indicating the partnership had been relieved of its lease covenant to pay the rent. Wood v. Bartolino, 48 N.M. 175, 146 P.2d 883 (1944). The partnership being liable for the rent, no question of assignment was involved in the 1969 lawsuit and no admission concerning an assignee of the lease can be inferred.

(h) Plaintiff claims no landlord's lien is involved because rent, under the lease, has been paid through September 1, 1971, and defendant has not claimed a lien for rent due in October, November and December, 1971. This is factually inaccurate. Defendant claimed a lien for "rent due or to become due by the terms of said lease."

■ (i) Plaintiff contends that defendant's seizure and detention of the property involved violated due process. We consider neither the factual correctness of this claim nor the constitutional issue. No such contention was raised in the trial court and, therefore, will not be consid-

ered. Mantz v. Follingstad, 84 N.M. 473, 505 P.2d 68 (Ct.App.1972).

*Extent of the landlord's lien.*

(a) On January 21, 1972, when defendant prevented plaintiff from removing property from the leased premises, defendant prevented removal of a truck and trailer. The evidence is that the truck and trailer had been brought to the premises for the purpose of removing property already there. Thus, a question exists as to whether the truck and trailer had "remained" on the leased property and whether they were subject to the landlord's lien. Section 61-3-4, supra. There is also testimony that some of the property located on the leased premises was property of plaintiff which had not been acquired from New Mexico Millworks, Inc.

(b) There is evidence that the partnership rented additional facilities from defendant. These additional facilities were not described in the original lease. New Mexico Millworks, Inc. paid the rent ($50 per month) on the additional facilities through September 1, 1971. Defendant requested the trial court to find that "a memorandum of the lease for the additional facilities was endorsed on page 1 of the written lease contract." The trial court refused the requested finding.

The judgment in the 1969 suit to collect unpaid rent states that the additional facilities were the subject of "a valid parole lease running for the term of the written lease." Defendant testified that at the time of the oral lease there was an addendum to the written lease. This addendum was identified as the handwriting appearing on the first page of the written lease. This handwriting bears no signature. Defendant testified that he was the one who added the handwriting. There is nothing indicating that the lessee agreed to a written addition to the original lease. Absent such evidence, the trial court could properly refuse to find that the oral lease was endorsed to the original written lease.

The landlord's lien, provided by § 61-3-4, supra, has two parts. There is a lien: (1) for rent due and (2) for rent to become due by the terms of a lease or other instrument in writing. Dees v. Dismuke et al., supra.

The trial court's refusal to find that the oral lease was endorsed to the written lease has the following consequences. Rent due or to become due under the written lease must be segregated from rent due or to become due under the oral lease. Property formerly belonging to New Mexico Millworks, Inc. must also be segregated according to whether the property was located on the premises subject to the written lease or was located on the premises subject to the oral lease. Such property, located on the original lease premises, is subject to a landlord's lien for rent due or to become due under the lease. Such property, located on the oral lease premises, is subject to a landlord's lien only for rent due.

Having ruled that Murdock's security agreement was superior to the landlord's lien, the trial court did not decide the issues discussed under this point—that is, it did not decide what property was subject to the landlord's lien and did not decide the extent of the landlord's lien on particular items of property. These issues remain open. The parties may invoke a ruling on these issues, on remand, if they so desire.

The trial court determined that plaintiff was not entitled to damages or attorney fees. No attack being made on this ruling, that portion of the judgment is affirmed.

The trial court ruled that the items located on defendant's premises were the rightful property of plaintiff. It did so on the erroneous basis that Murdock's security interest was superior to defendant's landlord's lien. Accordingly, this portion of the judgment is reversed.

The cause is remanded for further proceedings consistent with this opinion.

It is so ordered.

HERNANDEZ, J., concurs.

SUTIN, Judge (dissenting).

I respectfully dissent.

Plaintiff filed a complaint in replevin and recovered possession of personal property located on premises owned by defendant pursuant to the replevin statute. Section 22–17–1 et seq., N.M.S.A.1953 (Vol. 5). Defendant, by way of an affirmative defense, denied that his detention of the property was wrongful, and asked return of the property or a judgment for the amount of his landlord's lien. The "First Affirmative Defense" was not designated as a counterclaim. It was not so treated at trial.

At the conclusion of the trial, the court found that on October 1, 1965, defendant as lessor entered into a written lease agreement with Phillips and Kight, d/b/a New Mexico Millworks, a co-partnership, for a term of eight years. The lease commenced on November 1, 1965, and expired October 31, 1973. On April 1, 1967, Phillips incorporated the business and it was thereafter known as New Mexico Millworks, Inc. This corporation occupied and used the premises covered by the lease and paid all rentals to September 1, 1971. This corporation, at the time of trial, was a defunct corporation, having no corporate assets and no known officers nor board of directors.

During the existence of the corporation, Rex Murdock advanced monies for operating capital and obtained a security agreement and financing statement to secure an indebtedness in the amount of $293,060.27. It was dated September 17, 1970. This security agreement, together with financing statement, dated March 9, 1971, were filed of record.

On or before December 16, 1971, the debtor, New Mexico Millworks, Inc., notified Rex Murdock of its inability to pay its indebtedness and its decision to deliver possession of all collateral, including inventory and accounts receivable to Rex Murdock.

On December 17, 1971, Rex Murdock gave notice to defendant by certified mail of a private sale pursuant to the Uniform Commercial Code. On December 23, 1971, defendant wrote New Mexico Millworks, Inc. and Rex Murdock that defendant claimed a landlord's lien on the property owned by New Mexico Millworks, Inc. The private sale was held on January 6, 1972, at which time Rex Murdock bid on and purchased all of the inventory and assets of New Mexico Millworks, Inc.

After the private sale, Rex Murdock transferred title to all of the inventory and assets to plaintiff, Chessport Millworks, Inc., in which Murdock was the sole stockholder.

After January 6, 1972, plaintiff continued to occupy the premises covered by the lease until January 21, 1972.

There was not sufficient evidence to establish an adoption or assumption of the lease by Rex Murdock or plaintiff.

On January 21, 1972, defendant locked up the premises. At that time there was certain lumber and other building materials together with a 1967 model Chevrolet truck and van trailer owned by the plaintiff; that defendant wrongfully detained property and goods owned by plaintiff.

On January 26, 1972, defendant, by certified mail, mailed notice of lien that unless an indebtedness claimed by defendant to be owing from New Mexico Millworks, Inc. was paid within ten days, the property held by defendant would be sold pursuant to § 61–3–12, N.M.S.A.1953 Compilation.

No claim of landlord's lien was made as to property owned by Rex Murdock or plaintiff, and that Rex Murdock's security agreement was superior to defendant's landlord's lien, and that Murdock and plaintiff obtained good and valid title to all of the assets theretofore owned by New Mexico Millworks, Inc. pursuant to the private sale.

The court concluded that the property was wrongfully detained by defendant and plaintiff should prevail in its replevin action.

At the outset, it should be noted that "the New Mexico replevin statutes, in so far as they provide for a prejudgment taking of property without notice and hearing, are unconstitutional." Montoya v. Blackhurst, 84 N.M. 91, 500 P.2d 176 (1972). Plaintiff called this matter to the attention of the trial court, but defendant waived his right to question the unconstitutionality of the procedure undertaken in this case.

"It is well settled in New Mexico that the appellate court will not substitute its judgment for that of the trial court in weighing the evidence. If the trial court's findings are supported by substantial evidence, they must be affirmed. Cave v. Cave, 81 N.M. 797, 474 P.2d 480 (1970). Substantial evidence means such relevant evidence as a reasonable mind might find adequate to support a conclusion. Cave v. Cave, supra." Tome Land & Improvement Co. v. Silva, 83 N.M. 549, 552, 494 P.2d 962, 965 (1972).

The only issue on this appeal is whether there was sufficient substantial evidence to support the plaintiff's replevin action.

A. *There was sufficient substantial evidence to support plaintiff's action in replevin.*

Section 22–17–1, N.M.S.A.1953 (Vol. 5) provides:

> Any person having a right to the immediate possession of any goods or chattels, wrongfully taken or wrongfully detained, may bring an action of replevin for the recovery thereof and for damages sustained by reason of the unjust caption or detention thereof.

"Replevin, under this statute, is a possessory action. The primary object of which is plaintiff's right to the immediate possession of the property and, secondarily the recovery of damages by the plaintiff for the unjust caption, or detention thereof." Johnson v. Terry, 48 N.M. 253, 256, 149 P.2d 795, (1944).

Two issues of fact arise: (1) Did plaintiff have the right to immediate possession? (2) Were the goods and chattels wrongfully detained?

(1) *Plaintiff had the right to immediate possession.*

The trial court found that Rex Murdock and plaintiff did not adopt or assume the original lease executed between defendant and the partnership in 1965; that after the sale on January 6, 1972, plaintiff was the owner of the lumber and building materials formerly owned by the tenant, but the 1967 model Chevrolet truck and van trailer owned by plaintiff was free of any association with the tenant under the original lease.

It is apparent that plaintiff had the right to immediate possession of its truck and trailer because these items were free of any alleged lien held by the defendant. The defendant had no remedy against plaintiff. Baldwin Piano Co. v. George H. Wade & Co., 30 N.M. 285, 232 P. 523 (1924).

With reference to the lumber and building materials, the record shows that prior to January 21, 1972, defendant gave plaintiff permission to take material out of the yard without specifying what could be taken. A reasonable inference can be drawn, that consent was given to remove all the materials. The plaintiff then removed a great deal of material. On January 24, 1972, while Murdock and employees were on the premises loading material, defendant told Murdock he could not take any more and to get out. Murdock and his employees left the premises. Defendant locked up the premises.

On giving consent to removal, defendant's lien became void, § 61–3–7, N.M.S.A. 1953 (Repl.Vol. 8, pt. 1), and the defendant became a general creditor. His lien was lost. Wolcott v. Ashenfelter, 5 N.M. 442, 23 P. 780, 8 L.R.A. 691 (1890).

Plaintiff had the right to immediate possession of the lumber, building materials and the truck and trailer.

(2) *The goods and chattels were wrongfully detained by defendant.*

What rights does a landlord have by reason of his statutory lien? Section 61–3–11, N.M.S.A.1953 (Repl.Vol. 9, pt. 1) reads as follows:

> In order to enforce any lien under this act (61–3–1 to 61–3–13) the procedure shall be the same as in case of the foreclosure of a chattel mortgage if suit be filed in court. The lien claimant *when the property subject to the lien is under his control or in his possession* may, after the debt for which the lien is claimed becomes due and payable, serve the person or persons against whom the lien is sought to be enforced with a written notice or forward to the last known address of such person, by registered mail, a written statement, setting forth an itemized statement of the amount of the indebtedness, and if the same be not paid within ten [10] days after the service of said notice the property may be advertised by posting or publication as hereinafter provided, and sold to satisfy the indebtedness. [Emphasis added].

Under this statute, defendant had two methods of procedure: (1) by filing suit against the lessee. Gathman v. First American Indian Land, Inc., 74 N.M. 729, 398 P.2d 57 (1965). The defendant did not do this. (2) Serve notice of lien when the landlord has control or possession of the property.

The evidence is undisputed that, before the defendant forcibly evicted plaintiff from the premises and locked plaintiff out, defendant did not have control or possession of the property in the leased premises. Two days after locking plaintiff out, defendant mailed plaintiff a notice of lien.

The above statute does not give a landlord the right or power to forcibly take possession of the property in order to enforce his lien, "absent a showing of any right in addition to the mere fact of the existence of an unpaid lien." Bell v. Dennis, 43 N.M. 350, 93 P.2d 1003 (1939); Mathieu v. Roberts, 31 N.M. 469, 247 P.

1066 (1926); Ross v. Overton, 29 N.M. 651, 226 P. 162 (1924). When a landlord forcibly takes possession of the property without first demanding the rent due and claiming the landlord's lien, his acts are all illegal and amount to a naked and continuing trespass upon the property of the plaintiff. Ross v. Overton, supra.

The defendant wrongfully detained the property of the plaintiff.

**B.** *Priority of liens was not an issue in this case.*

The trial court did find that Murdock's security agreement was superior to defendant's landlord's lien because defendant did not claim a landlord's lien against the property owned by Murdock or the plaintiff.

This finding is not based upon the question of priority. It results from the pleadings and the court conference before trial began.

Defendant termed his answer as admissions and denials and "First Affirmative Defense." It was not designated as a counterclaim to foreclose the landlord's lien. Rule 21–1–1(8)(c), N.M.S.A.1953 (Repl.Vol. 4) provides in part:

> When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

At the court conference, plaintiff stated that it did not file an answer to the "First Affirmative Defense" because it was couched in terms of an affirmative defense. "We are not prepared today, to present any evidence or to defend, if it is considered to be a counterclaim . . . . We wouldn't stipulate to treating the first affirmative defense as a counterclaim."

> The Court: Well, I don't think it is necessary to treat them as a counterclaim, if he is successful against your replevin action, then he gets his property back, and you fail to survive your case.

The defendant did not assert that its "First Affirmative Defense" was a counterclaim, and he did not request the court to treat the pleading as a counterclaim.

It is obvious that this was a replevin action only. Defendant did not make any claim of a landlord's lien against the property owned by Murdock or the plaintiff.

Priority of liens was not an issue in this case. The only question pertinent is whether defendant's landlord's lien defeated plaintiff's claim in replevin. In my opinion, it did not.

*Judgment for the plaintiff should be affirmed.* The majority holding otherwise, I dissent.