CHARLES R. EVANS

*v.*

ABRAM LOWER et al.

[Filed May 28th, 1904.]

1. Where a building contractor became insolvent before the completion of the work, and the sureties on his bond bought material for him and became responsible for labor to be used by the contractor in completing the contract, they had no prior lien on the amount due the contractor on completion of the contract, but stood in the same position as any other person furnishing labor and material.

2. Where a materialman presented his bill to the contractor, stating that a notice was to be presented to the owner, and though there was some talk about the examination of vouchers, there was no claim that the bill was incorrect or that the contractor offered to pay it, there was sufficient evidence of a demand on the contractor to support a notice to the owner.

3. A materialman is not entitled to a lien for tools furnished to a building contractor, nor for money furnished to the contractor to purchase material.

4. A notice, under section 3 of the Mechanics' Lien law, is not invalidated by improperly including therein, in good faith, items to which the claimant is not entitled.

On bill of interpleader, filed by the complainant, who owed a portion of the contract price for building a cottage, against which retainers have been filed by laborers and materialmen.

*Mr. Edwin P. Longstreet,* for the complainant.

*Mr. Frank Durand,* for Messrs. James M. Vannote & Son.

*Mr. Halsted H. Wainwright,* for Albert Lavance and William F. Pearce.

*Mr. Thomas C. Curtis* and *Mr. John H. Backes,* for Joseph Backes.

REED, V. C.

Abram Lower agreed, in writing, to build, for Charles R. Evans, a cottage at Point Pleasant, for the sum of $2,535. Joseph Backes and C. B. Van Camp executed a bond to Mr. Evans, conditioned that Mr. Lower should execute his contract. The contract was duly filed and the work begun by Lower. Before the completion of the cottage notices were served upon the owner, Mr. Evans, of claims against the contractor, for work done and materials furnished by him on account of the erection of his cottage. J. M. Vannote & Son served a notice, on April 30th, 1903, for $802.94; Joseph Backes, on the same day (a little later), served a notice of a claim for $365.15; William Pearce, on May 1st, for a claim of $69.45, and Albert Lavance, on May 15th, on a claim for $55.

There was still unpaid upon the contract price $852.15. This amount has been paid into court by the complainant.

Out of this fund the sureties claim to be first paid $220.95, the amount which it cost them to finish the building after, as they insist, Mr. Lower had abandoned its erection.

I am unable to place these sureties in the same position as

those in the case of *St. Peter's Church* v. *Vannote, 66 N. J. Eq.* (*21 Dick.*) *78.* In that case the contractors had abandoned the work, so as to give the owner the right to complete it. By consent of the owner, through his agent, the sureties were permitted to complete the contract, as the owners might have done had they so chosen. Instead of doing it themselves they permitted the sureties to finish the work, and thereafter the contractors had no control over it.

In the present case there was no abandonment of the work to the owner. The owner never got a right to complete and take out the cost of completion from the contract price. The contractor went on and finished the work, but because of the want of funds and credit, the sureties bought for him or engaged to be responsible for the labor and materials afterwards used in the completion of the job. A knowledge by the owner that the contractor was insolvent, and that someone was furnishing materials and labor for the contractor, gave the owner no control over the completion of the building; that was an arrangement between the contractor and the parties backing him. For such labor paid and for the materials furnished the sureties stood as any other person so furnishing labor and material, and must rest any claim upon the fund due to the contractor upon their demand and notice, or upon a legal or equitable assignment of the contractor's rights in the contract price. In this case, as between the contractor and owner, there was nothing to prevent the former from suing for the whole contract price upon the completion of the building. This differs from the case where there is an abandonment, and the owner, or someone by his direction or permission, completes the building. The contract price is then not entirely owned by the contractor, and the notice can only reach what he has earned.

Therefore, I am compelled to the conclusion that the sureties have no right prior to that of the notifying labor and materialmen to payment.

The next question arises in respect to the claim of J. M. Vannote & Son, who gave the first notice.

It is first objected that no demand upon the contractor was

made by them prior to their notice to the owner. I think there was. It is true that Mr. Lower says that no express request for payment was made. He admits, however, that the bill was presented to him, and that it was then stated that a notice was to be presented to the owner. It is clear that he understood the purpose for which the bill was presented, and it is equally clear that he did not pay it, and that he had no money to pay it. This situation both he and Mr. Vannote understood. The talk between them about the examination of vouchers amounts to little, for there is no pretence that Mr. Lower offered to pay the bill in case he found it to be correct. Nor does he pretend that the bill was incorrect. But, Mr. Joseph B. Vannote, who presented the bill, says that Mr. Lower remarked that he did not have the money to pay it with, and this is likely to have been said under the circumstances. So I think that it is proved that there was a demand.

It is again insisted that the notice is a nullity, because J. M. Vannote & Son filed a notice for a sum in excess of the amount for which they would have been entitled to file a lien.

It appears that Vannote & Son advanced $105 to Mr. Lower to enable him to buy millwork, in which Vannote & Son did not deal, and which millwork went into this cottage. Now, this sum of $105 was due from Lower to Vannote & Son but was not a sum for which Vannote & Son could file a lien against the cottage. I think, however, that the mistake was not such as to invalidate his notice. The claim of Mr. Joseph Backes is also attacked, because he included in his claim a charge for certain tools furnished to Lower, to be used in the work upon the cottage. The bill amounts to $6.41. This part of the bill was not a lienable claim, and was made mistakenly, but in good faith, and does not invalidate his notice.

The result reached is that the first claim in order of priority is that of Lavance, for $55 for labor. The next is J. M. Vannote & Son, less the $105 already mentioned. The next, Joseph Backes, for $365.15, less $6.41 already mentioned. The claim of William Pearce is not for labor and so must stand upon the time when his notice was served.