GEORGE W. LANTERMAN, APPELLANT, v. ARTHUR LUBY AND JOSEPH TONKINS, TRADING AS LUBY & TONKINS, RESPONDENTS.

Submitted March 21, 1921—Decided June 20, 1921.

Where a garage keeper or repairman permits an automobile, to or for which he has furnished service or supplies at his garage or shop without receiving payment therefor, to be taken away by the owner, who subsequently sells and delivers it to an innocent purchaser for value without notice, the lien created by the Garage Keepers' Lien act of 1915 (*Pamph. L.,* p. 556) for such service or supplies does not bind such automobile in the hands of such purchaser. *Crucible Steel Co.* v. *Polack Tyre and Rubber Co.,* 92 *N. J. L.* 221, distinguished.

On appeal from the Supreme Court.

For the appellant, *Addison Ely* (*Seth H. Ely* on the brief).

For the respondents, *Henry P. Bedford.*

The opinion of the court was delivered by

WHITE, J.    This is an appeal from a judgment of the Supreme Court affirming a judgment of the District Court of East Orange in favor of the defendants in an action of replevin by a garage keeper to recover possession of an automobile under authority of the Garage Keepers' Lien act of 1915. The plaintiff is a garage keeper who sold four automobile tires to one John H. Nee, who at the time was the owner of the automobile upon which they were placed, and who subsequently sold and delivered it to defendants, who were innocent purchasers for value without notice of any lien or of any facts giving rise to a lien. Plaintiff sued Nee for the price of the tires and obtained judgment for $280.10, upon which judgment $10 was paid on account, and then failing to procure further satisfaction, he brought this action to assert a lien against the automobile. The District Court and the Supreme Court both thought that in suing Nee for the debt, plaintiff had elected to waive his lien under the act against the automobile. We are not prepared to concur in the soundness of this view, nor do we find it necessary to pass upon it, one way or the other, for we are satisfied that the judgment should be sustained upon the ground that under a true construction of the act it does not give a garage keeper who has parted with possession of an automobile upon or for which he has rendered or furnished service, repairs or supplies, a lien thereon in the hands of a subsequent innocent purchaser for value without notice.

The act in question was approved April 14th, 1915 (*Pamph. L., p.* 556), and is entitled "An act for the better protection of garage keepers and automobile repairmen." It has three sections, the first conferring the lien, the second providing that loss of "control" shall not cause loss of lien, and the third providing for a sale in order to realize upon the lien.

The first section reads as follows: "All persons or corporations engaged in the business of keeping a garage or place for the storage, maintenance, keeping or repair of motor vehicles, and in connection therewith stores, maintains, keeps or repairs any motor vehicle or furnishes gasoline, accessories or other

supplies therefor at the request or with the consent of the owner or his representative, whether such owner be a conditional vendee or a mortgagor remaining in possession or otherwise, has a lien upon such motor vehicle or any part thereof for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle or for furnishing gasoline, accessories or other supplies therefor, and may without process of law detain such motor vehicle at any time it is lawfully in his possession until such sum is paid."

What the act expressly by name confers is a "lien," and except as enlarged by the clear provisions of the act the rights of the claimant are prescribed by the legal attributes and limitations of that term. It is important, therefore, to consider what those attributes and limitations are.

Derivatively, the word "lien" means a "string," a "tie," a "bind." *Century Dictionary. Stansbury* v. *Patent Cloth Manufacturing Co.,* 5 *N. J. L.* \*433. In its pure legal sense it "implies that one is in possession of property of another, and that he detains it as security for some demand which he has in respect to it. A lien, therefore, implies, first, possession by the creditor; second, title in the debtor, and third, a debt arising out of the specific property." *Jones Liens* (3d ed., 1914), ¶ 20, citing Grant, M. R., in *Gladstone* v. *Birley,* 2 *Mer.* 401. "Title in the debtor," as here used, does not necessarily mean absolute title. It is enough if with permission of the real owner the one who contracts the debt legally seemed to be the owner or his authorized representative and was believed to be such by the one who performed the service or furnished the supplies which gave rise to the lien. *White* v. *Smith,* 44 *N. J. L.* 105; *Crucible Steel Co.* v. *Polack Tyre and Rubber Co.,* 92 *Id.* 221. "A lien is neither a right of property in a thing, nor a right of action for a thing; it is simply a right of detainer." *Brace* v. *Marlborough,* 2 *P. W.* 491; *Hammonds* v. *Barclay,* 2 *East* 227; *Peck* v. *Jennes,* 7 *How.* (*U. S.*) 612. A lien differs from a mortgage, in that a mortgage is a transfer of title as security (*Colton* v. *Depew,* 60 *N. J. Eq.* 454), whereas a lien confers no title; it differs from a pledge, in that a pledge is a transfer of possession as

security, whereas in the case of the lien the transfer of possession is not for the purpose of security, but in order that the service may be rendered to the chattel in question, and the lien arises from the rendering of that service if such service be not paid for. It is essentially a right to detain. It is the natural outcome of the transaction wherein one takes his chattel to another with whom he contracts for the performance by the latter of some service upon it for its betterment. The owner does not pay for the service before it is performed, because he has the right to see that it is right before he pays for it, but, on the other hand, the one who performs the service, having performed it well, has the right to be paid for it before the owner may take away his property so benefited by the service. Possession to the extent necessary for the rendering of the service to the chattel involved is therefore an essential element to a "lien" upon it for the service. "A lien," said Lord Ellenborough, "is a right to hold, and how can that be held which was never possessed." *Heywood* v. *Waring*, 4 *Camp.* 291.

Moreover, the voluntary relinquishment of possession at common law terminated the lien. Lord Kenyon said "the right of lien has never been carried further than while the goods continue in the possession of the party claiming it." *Sweet* v. *Pym*, 1 *East* 4; approved by Lord Ellenborough in *McCombie* v. *Davies*, 7 *Id.* 5; and Mr. Justice Buller said in *Lickbarrow* v. *Mason*, 6 *Id.* 21: "Liens at law exist only in cases where the party entitled to them has possession of the goods; and if he once part with the possession after the lien attaches the lien is gone."

Where, however (and this brings us to the immediate neighborhood of the present case), the parties themselves agree with each other that the owner may take the chattel away from the possession or control of the lien claimant, and that the lien shall nevertheless continue, such agreement, as against the owner, who was a party to it, will be good, but it will not be binding against a subsequent innocent purchaser for value without notice. Thus, where the owners of a sawmill permitted boards sawed by them from logs brought to the mill

by the owner for that purpose, to be removed from their mill-yard to the bank of a canal half a mile away under an agreement with the owner that they did not relinquish their lien for their charges for sawing, it was held that while the sawyers retained a good lien as against the owner who made the agreement, they lost their lien in respect to third persons who bought the boards for value without notice. *McFarland* v. *Wheeler,* 26 *Wend.* (*N. Y.*) 467.

The reason for this is obvious. Secret liens upon chattels are an obstruction and a menace to trade and as such are against the policy of the law. They attempt to contradict and to destroy the universally accepted and natural as well as legal badge of ownership of chattels, which is possession. The law is most jealous in its protection of an innocent purchaser of a chattel for value without notice, who has relied upon possession as the badge of ownership. If the property has been stolen his title may be bad, but, short of that, if he has looked for liens or encumbrances where the law has told him to look, as, for instance, for chattel mortgages in the record where they are required to be recorded, and he finds none, he is entitled to rely upon what the possession tells him.

Bearing these principles in mind, what does the Garage Keepers' Lien act do? It expressly makes applicable the principle of the common law lien for service, repairs and supplies furnished to or for a new kind of chattel, viz., an automobile. Apart from the fact that the thing which is thus expressly made applicable to this new subject is called a "lien," thereby in the name defining its attributes and extent, the act expressly provides that the service, repairs or supplies are to be furnished "in connection with" the claimants' garage or place; that they are to be so furnished "at the request or with the consent of the owner or his representative;" and are to be furnished to or for the motor vehicle against which the lien is claimed; thus stipulating the three common law characteristics above enumerated, viz., possession by the creditor, title in the debtor, and a debt arising out of the specific property.

The first section of the act, however, in addition to the right of retention of possession incidental to the lien at common

law, seems to authorize such retention also in case the automobile, having with permission been taken away by the owner, shall again come into the lawful possession of the claimant; and the second section of the act provides that the claimant, having acquired a lien under the provisions of the first section, shall not lose it by reason of allowing the motor vehicle to be removed from the "control" of the claimant, in which case the claimant may, without further process of law, seize the motor vehicle "wherever" the same is in the State of New Jersey.

We think that both of these provisions refer to the automobile as the property of the owner who contracted the debt or of parties who stand in a like position with such owner, and do not apply to subsequent innocent purchasers for value without notice. As before pointed out, the owner may by express agreement continue the lien after surrender of possession so that it will bind him and his privies, but he cannot so continue it against a subsequent innocent purchaser for value without notice; and, clearly, what he can bind himself to by contract, the legislature can impose upon him as one of the terms of such contracts as he shall subsequently make. *Crucible Steel Co.* v. *Polack Tyre and Rubber Co., supra.* This, we think, is exactly what the legislature intended to do under this act. To this extent the act is remedial and is entitled to liberal construction, but further than this it would be destructive of common law principles and policies, and should receive very strict construction. In this connection it may be noticed that the act does not say that the automobile may be seized under the lien in whosesoever possession or ownership the same may be found, but only "wherever" the same is, presumably (under strict construction), in the same or like possession or ownership as when permitted to be taken away from the lien claimant's "control." We think these provisions were aimed at the first of the above enumerated characteristic provisions only, namely, "possession by the claimant," and not at the second, namely, "title in the debtor;" and that the latter, subject to like qualifications, is just as essential to the subsequent reassertion of the lien or seizure

after possession has been parted with as it was to the original attachment of the lien.

It is true that in *Crucible Steel Co.* v. *Polack Tyre and Rubber Co., supra,* where a conditional vendee ordered the repairs to the auto truck in question and then defaulted on his contract of purchase of the truck, and his vendor took it back under the conditional sale contract, we held that the lien was good against the truck in the hands of the vendor, because, under these circumstances, such vendor was not an innocent purchaser for value without notice, but, under the express provisions of the act, occupied rather the position of a principal, with the conditional vendee his representative. For these very reasons that case is clearly distinguishable from this one.

Whether, in case the act had expressly included subsequent innocent purchasers for value without notice within those against whom the right of seizure under the second section would exist (which it did not), the act would be unconstitutional as a deprivation of property without due process of law, contrary to the inhibition of the fourteenth amendment to the constitution of the United States, we do not feel called upon to decide. In *Crucible Steel Co.* v. *Polack Tyre and Rubber Co., supra,* we said with reference to this same act: "In support of the broad contention that the statute is unconstitutional, counsel adds a general assertion that the act permits the deprivation of property without due process of law in contravention of section 1, article 14 of the amendments to the constitution of the United States. The gist of the argument to support this claim is that the statute in permitting a person, who has acquired a lien upon a chattel and lets it go out of his possession, to retake the same wherever he may find it in this state, might prejudicially affect the rights of a third party, who, ignorant of the existing lien, had in good faith and for a valuable consideration acquired a property interest therein. But no such case is before us for decision. We cannot indulge the presumption that a court will place a construction upon the statute so that it will operate to deprive a person of his property without due process of law. There is nothing

in the language of the act itself from which any such legislative declaration or intent may be properly inferred."

, We base our decision upon the construction of the statute, and for the reasons above stated the judgment in favor of the defendants is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, PARKER, BERGEN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ.   11.

. *For reversal*—None.