93 P.2d 1003

BELL v. DENNIS.

No. 4467.

Supreme Court of New Mexico.

Sept. 8, 1939.

R. A. Prentice, of Tucumcari, for appellant.

C. C. Davidson, of Tucumcari, for appellee.

MABRY, Justice.

This appeal presents the question of what effect has an agistor's lien upon livestock which, over objection but with his knowledge, was removed from the lien claimant's possession, and where such livestock thereafter came into possession of an innocent purchaser for value, the lien claimant taking no appropriate action to protect his lien until some five months thereafter.

The lien claimant, plaintiff below, suffering an adverse ruling by the trial court, prosecutes this appeal. Defendant and appellee, E. Dennis, was the innocent purchaser of the cattle, consisting of twenty head, removed from the possession of the lien claimant, appellant Bell.

The cattle were removed by the then owners, also defendants below but not parties to this appeal, Emma Craft and William Craft. It is undisputed that the said Dennis purchased of the Crafts, without notice, unless it may be said that the recording of a notice of lien hereinafter discussed can be said to impart constructive notice.

The appellant will hereafter be referred to as Plaintiff and the appellee as Defendant.

A notice and claim of lien was filed by plaintiff on June 15, 1934, and in September of that year the said removal was effected, Dennis purchasing the cattle in February, 1935, and just a short time prior to the filing of suit by plaintiff to foreclose his lien. Defendants Emma and William Craft, owners of the cattle and sued for the pasturage, defaulted, and personal judgment against them for the amount of plaintiff's claim was had, but which judgment went also in favor of defendant Dennis, denying plaintiff a right to foreclose as against the cattle so purchased by defendant.

It is clear that unless defendant Dennis may be said to have had constructive notice of the lien so as to be bound thereby in purchasing the cattle, he had no notice at all of plaintiff's claim for the unsatisfied pasturage bill. It appears that although plaintiff knew at the time of the removal of the cattle from his pasture, he took no action to recover the same or to give notice to defendant Dennis or others, other than the filing and recording of his claim and "notice and claim of the lien" some three months prior to time of removal, and eight months prior to the filing of this suit to foreclose the lien.

Plaintiff contends that his lien vested when he took the cattle to pasture and so remained at all times, regardless of the change of possession and regardless of the fact the chattels went into the hands of an innocent purchaser. Defendant Dennis relies upon the fact that he had no actual

notice of plaintiff's claim, and that the filing and recording of a notice of lien not being by statute authorized, it affords no notice as a matter of law; and further, that plaintiff having lost possession, and in the meantime and for some five months exercising no diligence in attempting recovery or giving notice, he is in the position of having acquiesced in the removal and can no longer maintain his ·lien as against an innocent purchaser for value without notice.

We examine first the question of what notice, if any, follows from the recording of the notice and claim of lien. The objection goes to the question of statutory authorization for such recordation only and not to the form or sufficiency of the notice if it were in fact allowable. It may be said to be the rule almost universally accepted, that: "Constructive notice of a contract cannot be implied from the fact of its record in the office of the clerk of the county, where there is no statute providing for such record." Burck v. Taylor, 152 U.S. 634, 14 S.Ct. 696, 38 L.Ed. 578. See also Blake v. Boye, 38 Colo. 55, 88 P. 470, 8 L.R.A.,N.S., 418; Schmidt v. Shaver, 196 Ill. 108, 63 N.E. 655, 89 Am.St.Rep. 250, and cases cited in 23 R.C.L. 204, note 3.

We hold that there being no statute so authorizing, such recording did not give constructive notice and said defendant having no actual notice of the claim or lien was uneffected by it, unless it be through the other consideration now to be noticed,

viz.: Did the claim and the lien of plaintiff remain upon and follow such chattel into the hands of defendant Dennis under the circumstances through which he obtained ownership and possession as herein set out?

So, the trial court evidently founded its decision upon its findings of acquiescence, or estoppel by conduct to assert the lien. Whether the question may be thus resolved, so as to show "consent" to the removal we need not decide, since we hold that the statute does not contemplate a lien which would follow the property into the hands of an innocent third person and purchaser for value, for the reasons hereinafter set out.

When we examine the statute in light of the common law rule and with the aid of our former decisions, we find no great difficulty.

In the first place, why may it be contended that the statute contemplates the lien following into the hands of an innocent party? The common law rule was to the contrary we know, and likewise most courts interpret lien statutes as being declaratory of the common law.

"The common law protects purchasers in good faith from secret liens of which they have no notice." Jones on Liens, 3rd Ed., Vol. 1, Sec. 578.

The policy of the law is against upholding secret liens and charges to the injury of innocent purchasers and encumbrancers for value. 17 R.C.L. 599, Par. 5.

■ Although an agistor's lien was itself unknown at common law, like most other liens it is in the nature of a common law lien and statutes of this character are said to be "only declaratory of the common law, and must be interpreted in conformity with its principles". 17 R.C.L. 602, Sec. 10.

■ Such lien is "a mere right in one man to retain that which is in his possession belonging to another until certain demands of the person in possession are satisfied, and cannot continue without possession". 17 R.C.L. 596, Sec. 2.

■ "It is indispensable to the existence of a common law lien that the party who claims it should have an independent and exclusive possession of the property, the right to the lien being based directly upon the idea of possession." 17 R.C.L. 601, 602; Roberts v. Jacks, 31 Ark. 597, 25 Am. Rep. 584.

As was said in Fishell v. Morris, 57 Conn. 547, 18 A. 717, 718, 6 L.R.A. 82, in holding that keeping possession was a vital requirement to keep alive an agistor's lien: "In all cases where statutes have created any right of security on the property of a debtor in the nature of a lien, not depending on possession, they have provided carefully for a registration of the transaction." With this rule in mind, it is easy to appraise the situation presented by our lien laws as affected by our recording statutes.

■ A lien is not an interest in a thing but only a right of detainer as security for payment of a debt. Johnson v. Razy, 181 Cal. 342, 184 P. 657.

It was not until the amendment of 1923 (Chapter 24, L.1923) that the right to an agistor's lien was created. See El Paso Cattle Loan Co. v. Hunt et al., 30 N.M. 157, 228 P. 888; Pacific Nat. Agr. Credit Corp. v. Hagerman, 40 N.M. 116, 55 P.2d 667.

■ "Clearly the landlord's lien on a crop is lost by a sale by the tenant to a purchaser without notice of the removal without out leased premises." Jones on Liens, 3rd Ed., Sec. 578, citing Scaife v. Stovall, 67 Ala. 237; Hunter v. Matthews, 67 Ark. 362, 55 S.W. 144.

■ It has been said that all secret liens upon chattels are an obstruction and a menace to trade, and as such are against the policies of the law. They attempt to contradict and to destroy the universally accepted and natural, as well as legal, badge of ownership of chattels, which lies in possession. The law is most jealous in its protection of the innocent purchaser of a chattel for value without notice, who has relied upon possession as the badge of ownership. "If the property has been stolen, his title may be bad, but, short of that, if he has looked for liens or incumbrances where the law has told him to look * * * and he finds none, he is entitled to rely upon what the possession tells him." Huie v. Soo Hoo et al., 132 Cal.App.Supp. 787, 22 P.2d 808, 810.

Section 22 of Chapter 24 of the Laws of 1923, p. 35 (section 82-407, Comp.Laws 1929) provides: "Any lien acquired under the provisions of this law, except those pro-

vided in sections 3336 and 3337 hereof shall become void, if the person entitled to the same shall consent that the property subject thereto be removed from his control or possession, except as against the person at whose request the repairs or parts were furnished and the labor performed. In the case of the liens provided in sections 3336 and 3337 if the person or persons entitled to the lien consent to a removal of the property subject to the lien from the leased premises the lien shall become void." (Section 3337 is the one involved here.)

The rule is stated by Blashfield, Vol. 7, Encyclopedia of Automobile Law and Practice, Permanent Edition, page 624, § 5125, to be that courts will generally construe such statutes modifying the common law rule as to possession as it applies to garagemen and mechanics, so as not to prejudice or effect the rights of innocent purchasers. The case of Lanterman v. Luby, 96 N.J.L. 255, 114 A. 325, is cited in support of this proposition. Mr. Blashfield further points out at page 625, § 5126, that such lien statutes so modifying the common law as to possession are constitutional as between the parties, but that such statutes are generally "invalid" as they purport to effect the right of "third persons who, in ignorance of the lien of the garageman, and while the lienor is out of possession, have in good faith and for a valuable consideration acquired a property interest in the automobile."

Reason and logic would require that such a rule apply with equal force certainly, to the lien of an agistor, which is, in fact, a creation of the statute, being unknown at common law.

Our lien statute with reference to agistors (Sec. 3337, Chapter 24, p. 35, Laws 1923; section 82-405, Comp.Laws 1929) provides, without any reference to innocent third parties, that agistors, and others enumerated, "shall have a lien on the property and stock * * * of those to whom feed or shelter have been furnished until the same is paid, and shall have the right to take and retain possession of such property and stock until the indebtedness is paid."

This right to "take" possession when lien claimant was out of possession as it applied to mechanics' liens, and where only the right to "retain" possession and not to "take," was given (also Chap. 24, p. 34, Laws 1923, Section 82-401, Comp.Laws of 1929), was denied by this court in the case of Mathieu v. Roberts, 31 N.M. 469, 247 P. 1066, absent a showing of any right in addition to the mere fact of the existence of an unpaid lien.

The case was not one involving the rights of any innocent third party, but it is clear that had such question been involved in that case, the lien would not have followed as to such party.

In the case of Lanterman v. Luby, supra, a decision of the question whether the lien act there in question would be held unconstitutional as a deprivation of property without due process of the law, contrary to the 14th amendment to the constitution of the United States, U.S.C.A., if the legis-

lative intention should be resolved in favor of the lien following into the hands of innocent purchasers for value without notice when possession be lost, was not found necessary. A decision there was based upon a construction of the statute that such was not the legislative intent.

We likewise pass the constitutional question and rest our decision upon what would seem to us the clear and plain intention of the lawmakers that no such lien could be invoked by a claimant being out of possession and under the circumstances here presented, even though not having surrendered possession by voluntary "consent", as against innocent third parties.

Mr. Justice Bratton, speaking in Abeytia v. Gibbons Garage of Magdalena, 26 N.M. 622, 195 P. 515, 518, and dealing with a mechanic's lien under chapter 65 of the Laws of 1917, referred to the common law rule in this language: "It is well settled that at common law the right of a mechanic or repair man to a lien * * * is dependent upon his actual and continued possession, and if, after acquiring such lien, he voluntarily surrenders possession of the repaired article, the lien becomes extinguished."

Mr. Justice Bratton further reasons that the legislature did not intend that the article may be reached when in the hands of an innocent purchaser because of the language employed in Sec. 26 of the act. This section provides that the method of proceeding against the property upon which claimant has a lien which, when he is out of possession, is by filing suit, securing judgment against the original debtor for the amount due and having execution thereupon. As Mr. Justice Bratton points out, no provision is made for making any party a defendant in such proceeding, excepting the one who contracted the debt, and this he reasons is indicative of a legislative intent that bona fide purchasers for value without notice who might come into possession of the chattel are, as under the common law, protected in their right.

In addition to this, it might also be observed that section 28 of the act (section 82-413, Comp.Laws of 1929) provides that after sale under foreclosure as therein provided, if there be any residue after payment of costs and satisfying the demand of the lien claimant, it "shall be refunded to the lien debtor". Thus, the statute again indicates that the interest of no third person as purchaser for value without notice has been considered in setting up the procedure for the satisfaction of such claims.

It may be said also that there is still another, and perhaps a more persuasive, argument against the legislative intent to include innocent purchasers for value in these lien law provisions. For example, we find in Sec. 20 of Chap. 24, Laws of 1923, (Section 82-405, Comp.Laws 1929), this language: "It shall be unlawful for a lessee or owner to remove live stock from the leased premises without the consent of the lessor or agistor unless the amount due for pasturage be paid."

It would seem reasonable to assume that this penal feature was inserted because of the clear hazard the lien claimant would face in most cases upon removal of the property from his control and custody, there being no provision for recording his lien. It would be then only possession that would ordinarily advise the world of his unsatisfied claim (Fishell v. Morris, supra), and it is quite natural that this situation should have been foreseen and provided against by the legislature.

Since the removal without consent would be "unlawful", clearly the lien claimant would have the right to regain possession immediately or within any reasonable time and before other interests should have intervened, by the lawful processes of the court, or by other lawful means.

The judgment of the trial court is affirmed, and, it is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and SADLER, JJ., concur.