111 N.J. Super. 585 (1970)
270 A.2d 64
THE BOARD OF EDUCATION OF THE CITY OF BAYONNE, IN THE COUNTY OF HUDSON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
FRED KOLMAN, t/a COLORAMA, INTERNATIONAL FIDELITY INSURANCE COMPANY, A CORPORATION, BROADWAY NATIONAL BANK OF BAYONNE, A BANKING INSTITUTION, SINGER HARDWARE AND SUPPLY CO., INC., WINDALUME CORPORATION, BILDISCO, A PARTNERSHIP, M. POSNOCK, INC., AND VETTER BROS. GLASS CORP., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided October 8, 1970.
*587 Mr. John J. Pagano, attorney for plaintiff.
Messrs. Dembe and Dembe, attorneys for defendant cross-claimant The Broadway National Bank of Bayonne.
Messrs. McGlynn and McGlynn, attorneys for defendant International Fidelity Insurance Co.
LORA, J.S.C.
Broadway National Bank of Bayonne (Broadway) loaned money to defendant contractor Fred Kolman, t/a Colorama, who subsequently defaulted on his contract with the Board of Education of the City of Bayonne for certain repair work at several schools. The purpose of the loan was to enable Kolman to pay his laborers and acquire supplies.
International Fidelity Insurance Company (International), the surety of the contractor, refuses to pay Broadway, denying Broadway has any status under the Municipal Mechanics Lien Act or the Bond Act. Broadway, at the time of the advance to Kolman, perfected a security interest in the contractor's accounts receivable.
Initially, Broadway states that on August 25, 1967, and pursuant to N.J.S. 2A:44-135, the board of education served all parties with an order to show cause why certain lien claims, including that of the bank, should not be paid, returnable before said board on September 1, 1967; that defendants International and Kolman defaulted on that occasion, made no appearance, nor in any other way contested *588 the claim of Broadway at that time. Thereafter, on September 14, 1967 the board, by resolution, declared Kolman to be in breach of his contracts. The board, however, did not pay any of the liens and in April 1969 instituted this interpleader action. It is the position of Broadway that International is estopped and legally barred from challenging the validity of its lien claim.
N.J.S.A. 2A:44-128 provides for a lien against funds held by a public agency on a public improvement contract, in favor of a "laborer, mechanic, materialman, merchant or trader, or sub-contractor," who "performs any labor or furnishes any materials, including the furnishing of oil, gasoline or lubricants and vehicle use, toward the performance or completion of any such contract." The mechanics for establishing such lien claim are provided for in N.J.S.A. 2A:44-132 to 134.
Pursuant to N.J.S.A. 2A:44-135 the public agency involved may serve notice, upon the contractor and upon any person who may appear to have an interest in the fund in the possession of the public agency, that the claim is filed, and requiring the contractor or such persons in interest to show cause before the governing board of the public agency, within five days from the service of notice, why the claim should not be paid. N.J.S.A. 2A:44-136 authorizes the public agency to pay any such lien claim without the order of any court, out of the funds in its possession upon which the claimant has a lien, unless the contractor or person in interest files a statement, duly verified, that the lien claim is unfounded and untrue, specifying in what respects the same is unfounded and untrue.
It would appear, however, that this section of the statute is merely discretionary and not mandatory. Here, despite the failure of the contractor or the bonding company to appear, the board of education nevertheless chose not to pay any of the claims presented. Since no payment of any claims was made by the board, it follows that the failure of the contractor and his bonding company to appear *589 did not in any way prejudice the position of Broadway or any other claimant. Hence no estoppel arises against defendant International.
The enforceability of Broadway's lien claim was thereby left to this court, in accordance with N.J.S.A. 2A:44-137. The basic issue for this court's determination, simply stated, is whether one who advances money to a contractor to enable him to pay laborers or to acquire materials is entitled to a mechanics lien, or is entitled to be subrogated to the position of the laborers paid off with said funds or to the position of the supplying materialman. It is my opinion that such third person is not entitled to a mechanics lien nor is he entitled to be so subrogated, in the absence of an assignment of the mechanics lien or of an agreement for such a lien, or of an obligation to make the loan or advancement, or a necessity to discharge such claim in order to protect his rights or interests. 36 Am. Jur., Mechanics Liens, § 79 (1941).
Support for this conclusion is found in In re North River Construction Co., 38 N.J. Eq. 433 (Ch. 1884), affirmed 40 N.J. Eq. 340 (E. & A. 1885), where a superintendent of a construction project advanced some $6,000 to the company to pay laborers on the job. He expected to be reimbursed by the company, but the company subsequently was adjudged insolvent and he never received the $6,000. It was held plaintiff was not entitled to a mechanics lien for the $6,000 he had advanced, nor was he entitled to be subrogated to the position of the workmen paid off.
The court rejected the creation of any direct mechanics lien, stating (at 435), "it is entirely clear that if he has any claim to such lien it must be on the principle of subrogation in equity." Then, in denying subrogation to the position of the workers paid off, the court said that "[it] has never been held that one who lends or advances money to a corporation to enable it to pay laborers, who, if their wages had remained unpaid, would have been entitled to the lien therefor, is, merely by virtue of such loan or advance, *590 entitled to that lien by equitable subrogation." (at 437).
The Chancellor stated the rationale behind the Mechanics Lien Act and why it necessitated denial of subrogation to plaintiff as follows:
The statutory lien given to workmen is to be confined within its legitimate limits. It is not to be extended by a forced application of the principle of subrogation in equity to cases not within the mischief which the law was designed to remedy. The object of the Legislature was to secure to a very meritorious but helpless class of persons the payment of the wages of their toil, and to that end to give them, personally, a paramount lien on the assets of the employer. It did not contemplate giving to creditors from whom the company might borrow money on its own credit with which to pay its workmen, such a lien on the assets for their reimbursement. [at 437-438]
The headnote to the case of Williams v. Bradford, 21 A. 331 (Ch. 1891), reads, "Such law [Mechanics Lien Law] does not apply to a general creditor who has furnished the contractor money with which to pay for labor or material." In Williams a bank had loaned money to a contractor to be used in the purchase of material and the payment of labor. The owner filed an interpleader, and while other claimants were given the status of mechanic lienors, the bank was denied that status because, as the court stated, the prerequisites to that status included the following which the bank did not satisfy:
He must be a creditor of the contractor; not a general creditor, but a creditor whose debt was contracted for work done to the building erected by the contractor for the owner, or for material furnished for the building. [at 331].
More recently in Tolland v. Lista, 46 N.J. Super. 272 (App. Div. 1957), the principle was again confirmed. There the lender advanced $3,350 to the contractor, his son, in order that he might purchase a shell needed in the construction of a dwelling. The Appellate Division denied the claim *591 by the lender that he had the status of a mechanics lienor, stating:
The basis of a mechanic's lien claim is the existence of a debt due and owing for labor performed or materials furnished. Plaintiff admits that if the money advanced by him was simply a loan to his son, who as builder then purchased the materials which went into the job, then he is not entitled to the lien claimed. Evans v. Lower, 67 N.J. Eq. 232, 235 (Ch. 1904). [at 276]
The lender attempted to show, unsuccessfully, that the transaction was in effect a novation wherein he was substituted for his son as purchaser from the supplier and consequently the direct supplier of the shell to the contractor. And in Evans, supra, the court denied mechanics lien status to a claimant who advanced money to the contractor to buy millwood which the lender was not in the business of supplying.
It follows, then, that Broadway is not a valid lien claimant to the funds which were held by the board of education and subsequently "turned over" to the bonding company. International received the sum on deposit with the board, totaling $19,533.62, in return for an agreement to hold the board harmless on any judgment entered in the bank's favor, and thereafter disbursed a total of $33,646.63 to the lienholders who agreed to settle their claims. The total amount of claims filed, excluding the bank's claim, was $35,246.63.
Broadway further contends that it has status under the performance bonds. The two bonds issued pursuant to statute for the protection of the school district as well as to guarantee payment for "all labor performed or materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of such buildings, works or improvements." N.J.S.A. 2A:44-143. The statutory form of bond is prescribed by N.J.S.A. 2A:44-147 and the bonds herein are identical to the statutory form.
Our courts have held that the Bond Act, the Municipal Mechanics' Lien Act and Trust Fund Act (N.J.S.A. *592 2A:44-147, 148) are in pari materia and must be read together. Key Agency v. Continental Cas. Co., 31 N.J. 98, 104 (1959), Morris Cty. Industrial Park v. Thomas Nicol Co., 35 N.J. 522, 526 (1961).
Key, in effect, denied mechanics' lien status to a plaintiff who had furnished workmen's compensation and public liability insurance coverage to the contractor engaged in building schools, in holding that the protection of the Trust Fund Act extended only to persons who could go against the public contractor's surety on the payment bond. The Key court went on to say:
And, while the point has never been expressly decided in this State, it would clearly appear that plaintiff in providing workmen's compensation and public liability insurance to the general contractor did not perform labor or furnish "materials, provisions, provender or other supplies, teams, fuels, oils, implements or machinery used or consumed in, upon, for or about the construction, erection, alteration or repair of * * * buildings, works or improvements." N.J.S. 2A:44-143. [at 109, 110]
In Morris Cty. Industrial Park v. Thomas Nicol Co., supra, which was an action to enforce claims under the Municipal Mechanics' Lien Law and Bond Act, Justice Hall for the Supreme Court stated:
All this language in the lien law evidences to us without question that the Legislature has limited a right of lien to a materialman supplying either the general contractor or a subcontractor. * * *
To turn to the bond act, somewhat different language is used, but we feel constrained to say that it has to be similarly limited. Section 143, previously quoted in full (N.J.S. 2A:44-143), in defining the additional obligation required to be contained in the performance bond, specified that it shall be "for the payment by the contractor, and by all subcontractors, for all * * * materials * * * used or consumed in, upon, for or about the construction * * *." The following section, N.J.S. 2A:44-144, prescribes the condition of this obligation of the bond in the same language, but including as well subcontractors of subcontractors. The precise form of the bond, set out in N.J.S. 2A:44-147, though couched in somewhat different phraseology, must be read in the light of the foundation provisions of the preceding sections just cited.
There are some instances where the bond act gives protection and the lien law would not. For example, the latter is not available *593 where the project is by the State itself, as has been noted. The bond act permits a claim against the surety for a period of up to 80 days after the acceptance of the improvement, N.J.S. 2A:44-145, while the lien law benefit is limited to a claimant who files a notice of lien within 60 days following acceptance. And there may be other situations. Cf. Wilson v. Robert A. Stretch, Inc., supra, 44 N.J. Super. 52, 59 A.2d 599. But we feel there is not sufficient legislative indication of intended difference between the two acts with respect to the issue before us [at 529-530]
Again, in Hiller & Skoglund, Inc. v. Atlantic Creosoting Co., Inc., 40 N.J. 6, 13 (1963), the court pointed out that while, generally speaking, the benefits of the Bond Act are broader and the protection greater than the right of lien, the act requires the prime contractor to furnish the agency with a surety bond, not only guaranteeing performance of the principal contract, but also including the "additional obligation for the payment by the contractor, and by all subcontractors, for all labor performed or materials * * * used * * * in, upon, for or about the construction * * * N.J.S. 2A:44-143 * * *" Subcontractors, materialmen and laborers are expressly made beneficiaries of the bond and have a direct right of action upon it. N.J.S. 2A:44-146 and 147."
Having considered the aforesaid, it is the opinion of this court that Broadway does not come within the comprehension of the Bond Act.
Lastly, Broadway argues it had a perfected security interest under the Uniform Commercial Code and had served upon the board of education copies of a duly filed financing statement assigning all accounts receivable of Kolman pursuant to N.J.S.A. 12A:9-101 et seq.; that, in any event, the Code provisions prevail over the Lien Act since they were enacted subsequent in point of time.
Interestingly enough, the court in Williams supra, in holding that the bank was a general creditor, further said: "There is no intimation on the record of any equitable assignments of a portion of this fund by Mr. Matthews *594 [the building contractor] in favor of the trust company." 21 A. 331, 332.
Here the bank filed its security interest and financing statement with the Secretary of State and noticed the board of education on August 2, 1967 of its claim in the amount of $12,072. At that time the board of education (owner) still had in its possession approximately $19,500. The lien claims, exclusive of any claim by the bank, totalled approximately $35,000 for work performed in 1966 and 1967. As stated in Mayo v. City National Bank and Trust Company, 56 N.J. 111, 117 (1970), an "assignment to plaintiff, whether outright or as collateral security, can rise no higher than the assignors entitlement to payment"; therefore, since Kolman, who had defaulted, was not entitled to any payment, Broadway in turn was not entitled to receive any funds from the owner board of education. See also, Allen B. DuMont Labs., Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959).
Then, too, N.J.S. 2A:44-131, entitled "Priority of lien over assignments," provides:
The lien given by and filed pursuant to this article shall have priority over an assignment, by a contractor or subcontractor to a third person of moneys due or to grow due to such contractor or subcontractor for labor performed or materials furnished for a public improvement referred to in this article even though such assignment was made prior to filing of notice by the lien claimant, but not if such money had been paid to the assignee at the time of the filing of notice.
N.J.S.A. 12A:9-310 of the Code, cited by Broadway's counsel, is not applicable since it deals only with the priority of certain possessory liens over a perfected security interest. As set forth in the New Jersey Study Comments, "The mechanic's lien is a non-possessory lien and is therefore excluded from § 9-310."
Additionally, implied repealers are not favored in the law. Applying the best set forth in Brewer v. Porch, 53 *595 N.J. 167, 173 (1969), I find the Mechanics' Lien Law and the Code are not inconsistent or repuguant in this respect.
In view of all of the foregoing, it is the court's conclusion that judgment be entered in favor of International Fidelity Insurance Company dismissing the claim of Broadway National Bank of Bayonne. No costs.