OPINION OF THE COURT
GIBBONS, Circuit Judge.
Mission Marine Associates, Inc., a debtor which filed a petition for an arrangement with its creditors pursuant to Chapter XI of the Bankruptcy Act (Mission Marine), and A.J. Armstrong Co., Inc., Lazere Financial Corporation and Fuqua Industries, Inc., secured creditors of Mission Marine (the secured creditors) appeal from orders of the United States District Court reversing an order of the Bankruptcy Court. The Bankruptcy Court had held that Penske G M Power, Inc. (Penske) had no lien on any property of the debtor. The district court, reversing, held the New Jersey Maritime Lien Act, N.J.S.A. 2A:44-59, confers on Penske a lien superior to claims of Mission Marine’s secured and unsecured creditors. We reverse.
Mission Marine engaged in the business of manufacturing and selling yachts. Since 1976 Penske has sold diesel engines for installation in those yachts, on open account with ninety-day credit. The yachts were sold, upon completion, to independent dealers who in turn resold them to the general public. When, on May 23,1979, Mission Marine filed its Chapter XI petition fifteen Penske invoices for engines totaling $498,379.50 were unpaid. None of the vessels in which the engines covered by those invoices were to be installed were yet complete. Unlike the secured creditors, Penske had taken no steps to obtain or perfect a security interest in accordance with the Uniform Commercial Code. N.J.S.A. 12A:9-101 et seq. Nevertheless it filed a complaint in the Bankruptcy Court claiming that as a matter of law it had a continuing lien on the vessels and the proceeds of their sale, preferred over all of Mission Marine’s creditors including secured creditors holding perfected security interests. The Bankruptcy Court rejected, but the district court accepted this contention. The latter relied on a New Jersey statute enacted in 1877 which provides:
A debt contracted by an owner of a vessel within this State, shall be a continuing lien upon the vessel and her apparel until paid, for:
a. Labor performed or materials or articles furnished in this State for the building, repairing, fitting, furnishing, or equipping the vessel in this State at the time when the same was performed or were furnished; or
b. Supplies, provisions and stores furnished within this State for the use of the vessel; or
c. Towing, wharfage and drydockage of the vessel and the expense of keeping the same in storage in port in water or on land, including expenses incurred in taking care of and employing persons to watch the vessel.
*680 The lien shall be preferred to all other liens on the vessel, except mariner’s wages.
N.J.S.A. 2A:44-59. The statute is one of those state enactments, now largely obsolete, passed to fill in the gap in maritime lien law caused by the Supreme Court’s announcement of the home port rule. The General Smith, 17 U.S. [4 Wheat.] 438, 4 L.Ed. 609 (1819), The Lottawana, 88 U.S. [21 Wall.] 558 (1874). The rule held federal admiralty law did not afford a lien to suppliers and repairers of a vessel in its home port. The enactment of the Federal Maritime Lien Act of 1910, 36 Stat. 604 obsoleted most of the New Jersey and similar statutes, for in § 1 it revoked the home port rule, and in § 5 it provided expressly for federal preemption.[1] Prior to 1910, however, the Court had held that an unlaunched vessel was merely a land based structure to which admiralty law had no application. E. g. Tucker v. Alexandroff, 183 U.S. 424, 438, 22 S.Ct. 195, 201, 46 L.Ed. 264 (1901). Even after the enactment of the Federal Maritime Lien Act, the Court continued to hold that a contract for construction of a vessel was not a maritime contract and that furnishing of necessary parts for a newly constructed vessel, even after the hull is in the water, does not give rise to a maritime lien. E. g. Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920). Thus only so much of N.J.S.A. 2A:44-59(a) as provides for a state law lien for parts furnished for a vessel’s initial construction remains effective.[2] That much, however, fits Penske nicely, giving it a non-possessory statutory materi-alman’s lien that does not require filing or other notice to creditors.
The appellants contend this secret lien is ineffective against them for three reasons. They contend, first, that a priority of lien provision in the Uniform Commercial Code, N.J.S.A. 12A:9-310, subordinates Penske’s non-possessory materialman’s lien to perfected security interests.[3] New Jersey has not ruled definitively on the priority of non-possessory secret liens over perfected security interests.[4] Second, they urge that the debtor in a Chapter XI proceeding, armed with the same rights as a trustee in bankruptcy by virtue of Section 342 of the Bankruptcy Act, is treated by virtue of Section 70(e) of that act as an ideal lien creditor under the applicable state law.[5] That section may not advance their cause, however, unless a judgment creditor would in New Jersey come ahead of a maritime lien creditor. On that question, as well, we find no definitive answer in the New Jersey cases. Finally, appellants rely on Section 67(c)(1)(B) of the Bankruptcy Act, which invalidates, against a trustee in bankruptcy, statutory liens which would on the date of *681 bankruptcy be invalid against a bona fide purchaser from the debtor.[6]
As with Section 70(c), the Bankruptcy Act’s reference is to state law; in this instance the position of a bona fide purchaser under New Jersey law against the holder of a non-possessory non-filing statutory lien. Here we do find clear instruction in the New Jersey caselaw. Penske’s lien is a typical New Jersey materialman’s lien, such as that provided for garagemen and repairers. In Lanterman v. Luby, 96 N.J.L. 255, 114 A. 325 (E&A 1921), the state’s highest court held that while the garagekeepers lien statute provided that loss of possession of the automobile would not deprive the repairman of his lien, if he did not retain possession the lien was not good against a subsequent purchaser without notice. The court announced the New Jersey policy concerning the protection of bona fide purchasers against secret non-possessory liens in these broad terms:
Secret liens upon chattels are an obstruction and a menace to trade and as such are against the policy of the law. They attempt to contradict and to destroy the universally accepted and natural, as well as legal, badge of ownership of chattels, which is possession. The law is most jealous in its protection of an innocent purchaser of a chattel for value without notice, who has relied upon possession as the badge of ownership.
96 N.J.L. at 259, 114 A. at 326. We are confident the Supreme Court of New Jersey would apply the same policy to protect a yachtsman who purchased from Mission Marine without notice of Penske’s claim from seizure of his yacht at Penske’s behest.
The district court concluded otherwise, relying not on any New Jersey cases, but on American Trust Co. v. W & A Fletcher Co., 173 Fed. 471 (1st Cir. 1909). Its reliance was misplaced. In Fletcher a shipowner executed a ship mortgage with an after acquired property clause covering a vessel to be constructed, recording the ship mortgage at the proposed home port of the vessel in Maine. The hull was constructed in Pennsylvania and the vessel towed to New Jersey, where engines were installed. The New Jersey shipyard relinquished possession without being paid, and later asserted a lien by virtue of the same New Jersey statute Penske relies on. A federal diversity court conducting an equity reorganization of the shipowner held the New Jersey shipyard’s lien superior to that of the prior ship mortgage despite the after acquired property clause. The case is distinguishable on several grounds. The New Jersey statute provided the shipyard’s lien “[should] be preferred to all other liens on the vessel.” Thus the ship mortgage fell literally within its terms. The statute makes no mention of priority of bona fide purchasers, and the holder of a mortgage with an after acquired property clause on a vessel to be built in the future could not qualify as such. Thus the Fletcher holding does not address the issue Section 67(c)(1)(B) of the Bankruptcy Act poses. To the extent that dicta in that rather discursive opinion may be construed as a suggestion about the treatment of bona fide purchasers and secret non-possessory lien holders in New Jersey, it is inconsistent with the policy announced in Lanterman v. Luby, supra, and would not be relied upon by a New Jersey court.
*682 Since New Jersey would protect a bona fide purchaser from Mission Marine, Penske’s lien is vulnerable under Section 67(c)(1)(B) even if New Jersey would provide for priority over perfected security interests. That conclusion requires a reversal, and relieves us of the necessity to resolve the other New Jersey law questions which the parties have tendered.
The order appealed from will be reversed.

. Act of June 23, 1910, c. 373 §§ 1,5, 36 Stat. 604, 605; now codified at 46 U.S.C. §§971, 975.

. The 1976 amendments by the New Jersey Legislature to subsections (b) and (c) of section 59 appear to have been a futile exercise. Laws of 1976 C. 55 § 1.

. The section relied on provides:
12A:9-310. Priority of Certain Liens Arising by Operation of Law.
When a person in the ordinary' course of his business furnishes services or materials with respect to goods subject to a security interest, a lien upon goods in the possession of such person given by statute or rule of law for such materials or services takes priority over a perfected security interest unless the lien is statutory and the statute expressly provides otherwise. L.1961, c. 120, § 9-310.

. Board of Education of Bayonne v. Kolman, 111 N.J.Super. 585, 270 A.2d 64 (Ch.1970). (In Kolman, a trial court suggested-as an alternate ground-non-possessory mechanics’ liens subordinate perfected security interests. Unlike the “Maritime” lien, the New Jersey Mechanics’ Materialmen’s and Laborer’s Lien, N.J.S.A. 2A:44—64—44—141, contains elaborate filing provisions.) Decisions in other states support appellants’ construction of Section 9-310 of the Uniform Commercial Code. Balzer Machinery v. Klineline Sand & Gravel Co., 271 Or. 596, 533 P.2d 321 (1975); General Motors Acceptance Corp. v. Colwell Diesel Service and Garage, Inc., 302 A.2d 595, 601 (Me.1973); Forrest Cate Ford v. Fryar, 62 Tenn.App. 572, 465 S.W.2d 882 (1971). See also U.S. v. Crittenden, 563 F.2d 678, 713 (5th Cir. 1977). But see Leger Mill Co., Inc. v. Kleen-Leen, Inc., 563 P.2d 132 (Okla.1977).

. Bankruptcy Act § 342, 11 U.S.C. § 742 (1976), and § 70(c), 11 U.S.C. § 110(c) (1976), are now found in the new Bankruptcy Act at 11 U.S. C.A. §§ 1107(a) and 544(a) (1979), respectively.

. 11 U.S.C. § 107(c)(1)(B) (1976) (Revised in new Act at 11 U.S.C. § 545(2) (1979)) provides: [EJvery statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: Provided, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of section 110 of this title and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law; And provided further, That if applicable lien law requires a lien valid against the trustee under section 110(c) of this title to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision by filing notice thereof with the court[J