IN RE SANDRA J. DAY, Chapter 7, Debtor.
MICHAEL J. CAPLAN, Trustee, Plaintiff-Appellee,
v.
REGATTA CAPITAL, LTD., Defendant-Appellee, and
DAYTON RITE AID, LLC, a California Limited Liability Company, Defendant-Appellant, and
YONKS & ASSOCIATES, JAN T. NELSON, ELAINE S. NELSON, WESTSTAR MORTGAGE CORPORATION, LAFARGE SOUTHWEST, INC., INTERNAL REVENUE SERVICE, CHARLES R. TRIMBLE, LYNDA K. TRIMBLE, DAVID ALTOUNIAN, LC5 INVESTMENTS, LLC, a New Mexico Limited Liability Company, CLAYTON ANDREWS, and SECURITY STATE BANK AND TRUST, Defendants.
BAP No. NM-09-005, Bankr. No. 06-12329-m7, Adv. No. 07-01156-m
United States Bankruptcy Appellate Panel, Tenth Circuit.
August 26, 2009.
Before BOHANON, MICHAEL, and NUGENT, Bankruptcy Judges.

OPINION[*]
BOHANON, Bankruptcy Judge
Appellant Dayton Rite Aid, LLC ("Dayton") appeals the bankruptcy court's determination that Appellee Regatta Capital, Ltd. ("Regatta") has a first position claim on the proceeds from the Chapter 7 Trustee's sale of the debtor's residence, as well as the denial of its motion to reconsider. For the following reasons, we AFFIRM both orders of the bankruptcy court.[1]

I. Jurisdiction
This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[2] The Appellant timely filed its notice of appeal.[3] No party elected to have this appeal heard by the United States District Court for the District of New Mexico, thus consenting to review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[4] An order fixing the priority of a creditor's claim is a final order for appeal purposes.[5] Here, nothing remains for the bankruptcy court's consideration. Thus, the orders granting Regatta a first priority claim on proceeds from the sale of the debtor's residence and denying Dayton's motion to reconsider are final orders for purposes of review.

II. Standard of Review
The bankruptcy court's priority determination is based on its interpretation of New Mexico's recording statutes. We review de novo the bankruptcy court's interpretation of a state statute.[6] We review the bankruptcy court's denial of a motion to reconsider for abuse of discretion.[7]

III. Factual Background and the Bankruptcy Court's Holding
Debtor Sandra Day filed this Chapter 7 on December 11, 2006. On August 22, 2007, the Trustee filed a motion to sell the debtor's residence located in Bernalillo County, New Mexico ("the Property"), free and clear of liens. On September 10, 2007, the bankruptcy court granted the Trustee's amended motion to sell the Property. The Trustee sold the Property and holds proceeds from the sale in the amount of $319,708.59.[8]
On November 1, 2007, the Trustee filed a complaint to determine the validity, priority, and extent of the liens against the Property.[9] On November 13, 2007, the Trustee filed an amended complaint, adding one more lien claimant.[10] All but two judgment lien creditors, Regatta and Dayton, have disclaimed or defaulted on the Trustee's complaint.
Regatta's judgment against Debtor and her nondebtor, deceased ex-husband is dated November 27, 2001, in the amount of $665,953.92 plus interest ("Regatta Judgment").[11] The Bernalillo County Clerk issued a transcript of Regatta's Judgment on January 3, 2002 ("Regatta Transcript"). Regatta recorded the transcript of its judgment in Bernalillo County on May 29, 2002.[12] On August 28, 2003, Regatta recorded a "Release of Transcript of [the Regatta] Judgment in Bernalillo County Only" to enable Debtor to obtain refinancing (the "Release").[13] On July 1, 2004, Regatta re-recorded the original transcript of its judgment.[14]
Dayton's judgment against the Days is dated December 28, 2005, in the amount of $1,280,944.23 plus interest ("Dayton Judgment").[15] Dayton recorded the transcript of its judgment in Bernalillo County on January 31, 2006 ("Dayton Transcript").[16]
On March 24, 2008, Regatta filed a motion for summary judgment, seeking a determination that it has a first and prior lien against all proceeds held by the Trustee from the sale of the Property.[17] Dayton opposed Regatta's motion, arguing (1) Regatta has assigned all or a portion of its judgment and therefore is not entitled to assert any lien position and (2) the bankruptcy estate acquired only a one-half interest in the property sold due to the pre-petition divorce of Sandra and Mark, consequently only one half of the proceeds from the sale are property of the estate.[18] Inexplicably, Dayton did not attach a copy of the Release to its response to Regatta's motion for summary judgment. The bankruptcy court rejected Dayton's arguments and granted Regatta's Motion for Summary Judgment ("SJ Order"), concluding, in pertinent part, that (1) based on the recording dates, the Regatta Transcript has priority over the Dayton Transcript; (2) Dayton failed to establish a genuine issue of material fact regarding whether Regatta had transferred or released its judgment, thus it was not possible for the bankruptcy court to determine whether the Release affected the judgment; and (3) neither divorce nor death affects the priority of Regatta's lien because its judgment was against both Sandra and Mark Day and the transcript of its judgment was recorded prior to their divorce and his death.[19]
On December 22, 2008, Dayton sought reconsideration of the bankruptcy court's SJ Order, this time submitting a copy of the Release.[20] Dayton argued that the bankruptcy court erred in (1) allowing the Trustee to sell property which does not entirely belong to the debtor's estate as half of the property belongs to debtor's deceased ex-husband, and (2) finding that no genuine issue of material fact existed to preclude summary judgment in light of the fact that (i) Regatta's Transcript, on its face, indicates that it had been re-recorded and (ii) Regatta did not deny that it executed a release of the transcript of its judgment, both of which sufficiently call into question the priority of Regatta's lien. The bankruptcy court refused to revisit Dayton's argument that Regatta failed to properly support its motion for summary judgment and that the Property sold included non-estate property since both arguments had been previously raised and rejected. The bankruptcy court, however, addressed Dayton's priority argument since it did not acknowledge in its SJ Order that the July 1, 2004, recording of the Regatta Transcript was a re-recording when it was apparent on the face of the transcript.[21] The bankruptcy court concluded that (1) the scope of the Release was limited to the transcript of its judgment, not the judgment itself, (2) there is no requirement in New Mexico Statutes 1978 §§ 39-1-6 or 39-1-8 to obtain a new transcript of judgment under the circumstances, (3) re-recording the original transcript re-established record notice of the judgment, creating a recorded lien against the property with a priority date as of the date the transcript of judgment was re-recorded, and (4) Regatta has priority over Dayton since the re-recorded date of Regatta's transcript of judgment pre-dates the date Dayton's transcript of judgment was recorded. The bankruptcy court denied Dayton's Motion for Reconsideration, finding insufficient cause to alter its conclusions of law.[22] This appeal followed.

IV. Discussion
Dayton argues that Regatta's release of the transcript of its judgment nullified its judgment lien, and that the subsequent recording of the transcript of its judgment, without the issuance of a new transcript, was ineffectual to establish a lien because it did not comply with New Mexico's recording statutes.[23] Dayton claims the bankruptcy court erred in not requiring Regatta to obtain a new transcript of judgment and the bankruptcy court's decision is contrary to the spirit of New Mexico's recording statutes and promotes fraud. We disagree.

A. New Mexico's recording statues do not require the re-issuance of a transcript of judgment after its release.
New Mexico Statutes 1978 §§ 39-1-6, 39-1-6.1, and 39-1-8 (Repl. Pamp. 2006) are New Mexico's recording statutes. Section 39-1-6 states:
Any money judgment rendered in the ... district court ... shall be docketed ... and a transcript or abstract of judgment may be issued by the clerk upon request of the parties. The judgment shall be a lien on the real estate of the judgment debtor from the date of the filing of the transcript of the judgment in the office of the county clerk of the county in which the real estate is situate. Upon approval and filing of a supersedeas bond upon appeal of the cause as provided by the law, the lien shall be void. Judgment shall be enforced for not more than fourteen years thereof.
Section 39-1-6.1 states:
When any judgment giving rise to a subsisting lien pursuant to Section 39-1-6 N.M.S.A. 1978 upon any real estate in the state has been fully satisfied, it is the duty of the judgment creditor to file a release of the lien in the office of the county clerk of the county in which the real estate is situate. The cost of filing the release of lien shall be assessed against the judgment debtor and shall be collected before the release of lien is required to be filed.
Section 39-1-8 provides:
A. The transcript of judgment issued by the clerks ... shall show:
(1) the names of the parties;
(2) the number and nature of the case;
(3) the court in which judgment was rendered;
(4) the date of the judgment, amount of damages, amount of costs, total amount of judgment and date of docket;
(5) the attorney for the creditor;
(6) issuance and return of executions, if any; and
(7) satisfaction of judgment when paid.
New Mexico's recording statutes are fairly straightforward: (1) to obtain a lien, a judgment must be docketed and a transcript of the judgment filed in the county in which the real estate is situated; (2) the transcript must contain certain information;[24] and (3) upon full satisfaction of a judgment, the creditor has a duty to file a release of its lien. The bankruptcy court correctly construed New Mexico's recording statutes as not requiring the issuance of a new transcript of judgment.
Dayton claims the Release signified that the Regatta Judgment had been satisfied in full because "a creditor's obligation to release a transcript of judgment arises only when the judgment has been satisfied in full."[25] Presumably, if a judgment has been satisfied in full, there can be no basis for a lien to attach to the debtor's property, therefore a new transcript of judgment must be obtained. This argument is flawed. New Mexico Statute 1978 § 39-1-6.1 provides that when any judgment has been fully satisfied, it is the duty of the creditor to file a release of its lien. Satisfaction in full triggers a duty to file a release, but this does not necessarily mean that a release signifies satisfaction in full. Indeed, it is undisputed that Regatta's judgment has not been paid in full. Creditors may file a release for a number of reasons, e.g., for purely altruistic reasons in the case of debts between relatives/friends, or as in this case, to make it easier for the judgment debtor to obtain refinancing.

B. The subsequent recording of the original transcript provided constructive notice of Regatta's Judgment and created a recorded lien against the property with a priority date as of the date the transcript of judgment was re-recorded.
Dayton claims that because New Mexico's recording statutes do not authorize re-recording a transcript of judgment, Regatta's subsequent recording of the original transcript of its judgment does not give constructive notice of its judgment, citing Bell v. Dennis.[26] Dayton claims that in Bell, an agister's lien was deemed void because no one had constructive notice of the agister's lien.
In Bell, an agister filed a notice and a claim of lien on twenty heads of cattle. Approximately three months later, the agister allowed the removal of the cattle from his pasture by the then owners, who later sold the cattle to an innocent third-party purchaser. The agister then filed suit to foreclose on his lien. The district court held that the agister acquiesced in the removal and could no longer maintain his lien as against an innocent third-party purchaser for value without notice. The New Mexico Supreme Court affirmed, noting that at that time, there was no statute authorizing the agister's recordation of his notice and claim of lien, thus those filings did not provide notice. In addition, since the common law required possession of the property for notice of an agister's lien and the agister did not have possession of the cattle, the agister must lose against the innocent third-party purchaser.
Bell is distinguishable because it involves an agister's lien on cattle. This case involves a lien against real property where possession is not determinative.
For a lien to attach in New Mexico, the judgment must be docketed and a transcript of the judgment filed in the county where the property is located. The Regatta Judgment has been docketed. A transcript of the Regatta Judgment has been issued by the county clerk, containing all of the information required by statute. Regatta's subsequent recording was in the county where the property is located. Thus, Regatta complied with New Mexico's recording statutes and its subsequent recording of the transcript of its judgment gave constructive notice.
The bankruptcy court correctly held that Regatta's subsequent recording gave notice of its judgment and established lien priority on the date of the second recording. Because Regatta's subsequent recording of the transcript of its judgment predates Dayton's recording of its transcript of judgment, Regatta has priority over Dayton.

C. The bankruptcy court's ruling does not promote fraud.
Dayton claims the bankruptcy court's ruling promotes fraud because it allowed the judgment debtor to obtain financing that she could not have obtained had the lien still been recorded.[27] Dayton contends the potential refinancing creditor "might have a lien subject to [] Regatta's lien despite the fact that any search on the real property would have been entirely futile in warning potential creditors of [Regatta's] lien."[28] This argument is flawed because a refinancing creditor's lien would not necessarily be subordinate to Regatta's lien. Dayton misconstrues the bankruptcy court's ruling. The bankruptcy court did not give Regatta's lien continuous priority over all others. Regatta had a valid lien against the property from May 29, 2002 (when the transcript was originally recorded), until it released its transcript on August 28, 2003. Regatta re-recorded the transcript on July 1, 2004. Regatta had no lien upon the real property from August 29, 2003, until June 30, 2004. Had an innocent third party provided refinancing during that time, that creditor's lien would have priority over Regatta. Likewise, had Dayton recorded its transcript of judgment during that time, it would have priority over Regatta. Dayton, however, recorded the transcript of its judgment approximately 18 months after Regatta re-recorded the transcript of its judgment.

D. An issue not identified in Appellant's Statement of Issues is waived.
Dayton claims that Regatta must bring the Estate of Mark Day as a party to this action.[29] Dayton did not identify this issue in its Statement of Issues.[30] Accordingly, it is deemed waived and this Court will not consider it.[31]

V. Conclusion
Having carefully reviewed the parties' briefs, the record, and applicable law, we AFFIRM for the reasons stated above.
NOTES
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[1] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. Fed. R. Bankr. P. 8012. The case is therefore ordered submitted without oral argument.
[2] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002.
[3] Fed. R. Bankr. P. 8002(a).
[4] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[5] In re Miller, 284 B.R. 734, 736 (10th Cir. BAP 2002) (citing In re Kids Creek Partners, L.P., 200 F.3d 1070, 1074 (7th Cir.2000)); In re Saco Local Dev. Corp., 711 F.2d 441, 445-46 (1st Cir. 1983) (holding that a "final judgment, order, or decree" entered in a bankruptcy case "includes an order that conclusively determines a separable dispute over a creditor's claim or priority").
[6] In re Castletons, Inc., 990 F.2d 551, 557 (10th Cir. 1993) (citing Salve Regina Coll v. Russell, 499 U.S. 225, 231 (1991)).
[7] In re Rafter Seven Ranches LP, 362 B.R. 25, 28 (10th Cir. BAP 2007) (court's denial of motion for reconsideration is reviewed for an abuse of discretion).
[8] See Trustee's Complaint to Determine the Validity, Priority, or Extent of a Lien of the Defendants Upon the Debtor's Real Property Located at 1265 Bona Terra Loop, N.W., Albuquerque, New Mexico 87114, at ¶ 11, in Joint Appendix ("App.") at 22-24.
[9] Id.
[10] Trustee's Amended Complaint to Determine the Validity, Priority, or Extent of a Lien of the Defendants Upon the Debtor's Real Property Located at 1265 Bona Terra Loop, N.W., Albuquerque, New Mexico 87114, in App. at 25-27.
[11] See Transcript of [Regatta] Judgment, in App. at 35.
[12] Id.
[13] Release of Transcript of [Regatta] Judgment in Bernalillo County Only, in App. at 148.
[14] Transcript of [Regatta] Judgment, in App. at 35.
[15] See Transcript of [Dayton] Judgment, in App. at 72.
[16] Id.
[17] Regatta's Motion for Summary Judgment in App. at 38-40.
[18] Dayton's Response to Regatta's Motion for Summary Judgment in App. at 42-86.
[19] Order Granting Regatta's Motion for Summary Judgment ("SJ Order") in App. at 125-134. Dayton's evidence regarding the Release were uncertified copies of docket sheets which the bankruptcy court noted "do not constitute admissible evidence for purposes of summary judgment." Id. at 131.
[20] Dayton's Motion for Reconsideration of Regatta's Motion for Summary Judgment Entered on December 10, 2008 ("Motion for Reconsideration") in App. at 137-145.
[21] See SJ Order, Undisputed Facts at ¶3 in App. at 127-128 ("Regatta ... recorded the Transcript of Judgment [] on July 1, 2004.").
[22] Order Denying Dayton's Motion for Reconsideration in App. at 175-181.
[23] Appellant's Br. at 12.
[24] Dayton argues the original transcript of the Regatta judgment is unreliable because it is inaccurate with respect to the balance owed on Regatta's judgment. Appellant's Reply Br. at 13. Section 39-1-8, however, does not require a transcript of judgment to show the outstanding balance. The amount of Regatta's judgment does not affect its lien priority.
[25] Appellant's Br. at 13.
[26] Bell v. Dennis, 93 P.2d 1003 (N.M. 1939).
[27] It is unclear from the record whether Day actually obtained refinancing.
[28] Appellant's Br. at 14.
[29] Appellant's Br. at 19.
[30] Statement of Issues on Appeal in App. at 206.
[31] Bankruptcy Rule 8006 states in pertinent part that the appellant shall file "a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Fed. R. Bankr. P. 8006. See also Raskin v. Malloy, 231 B.R. 809 (N.D. Okla. 1997) (an issue that is not listed in the Statement of Issues pursuant to Rule 8006 "and is not inferable from the issues that are listed is deemed waived and will not be considered on appeal").